## THE STATE v. WALTER E. WELCH, Appellant.

Division Two, December 22, 1925.

1. **WITNESS: In Rebuttal: Indorsement: During Progress of Trial: Discretion.** Defendant was being tried for felonious assault, and a physician testified for the State that seven days after the assault he examined the assaulted man and found a depression fracture three inches long on the top of his head. For defendant another physician testified that he treated the assaulted man on the evening of the assault and found no fracture and would have been able to find one had it existed, but that an X-ray photograph might show an injury to the skull if there was one. On the second day of the trial the prosecuting attorney asked permission to indorse the name of a third physician on the information, stating that he wished to show by him, upon rebuttal, both by his opinion and by an X-ray photograph, that there had been a fracture of the assaulted man's skull; that he had learned the facts which this witness would testify after the trial had proceeded for a whole day, and could not have anticipated that the witness for defendant would testify that there had been no fracture or depression of the skull. Counsel for defendant objected to the indorsement of the name of this third physician on the information, for the reason that his testimony would not be in rebuttal, and on account of surprise. The court overruled the objection, permitted the indorsement, and the physician, later produced by the State in rebuttal, identified an X-ray picture of the skull made by him on the first day of the trial, and testified that it showed a fracture of both tables of the skull, the fracture showing "starlike" in the photograph. No affidavit of surprise was filed, no application for a continuance was

State v. Welch.

made, and no objection was made to the testimony of the physician when offered. *Held*, that the trial court did not abuse a sound judicial discretion in permitting the name of the physician to be indorsed on the information, and no error was committed in receiving his testimony in rebuttal.

2. **EVIDENCE: Defendant's Intent: Illegal Effort to Justify Assault.** Defendant, charged with feloniously wounding one Underwood with a club, is not entitled to testify with what intent he assaulted Underwood, where it is manifest that he is illegally attempting to get before the jury the fact that Underwood on some former occasion had had sexual intercourse with his wife and that he was justified in punishing him therefor.

3. ———: **Assault: Justification: Remote Intercourse with Wife.** In the trial of a defendant charged with felonious assault upon one Underwood, proffered testimony by defendant's wife, recently married and under sixteen years of age, that, fifty days before the assault, Underwood took her in his automobile to the country and there had sexual intercourse with her, and that she thereafter told her husband of the occurrence and from time to time portions of her experience, was too remote in point of· time, and under the circumstances of this case constituted no justification for the assault, and was properly excluded.

4. ———: **Cross-Examination of Defendant.** Where defendant on direct examination had testified that when he committed the assault he had in his hand "a little salt bag with a little silver money in it," it was not error to permit the prosecuting attorney to interrogate him on cross-examination with reference to statements made by him in the office of said attorney relating to the contents of said sack.

5. ———: **Assault: Deadly Weapon.** It may be inferred, from evidence that there was a three-inch gash on the head of the assaulted party, that the club with which the assault was made was a deadly weapon.

6. **INSTRUCTION: Assault in Defense of Person.** An instruction telling the jury that if they find and believe from the evidence that "the defendant, without any just cause or provocation and in defense of his person," feloniously assaulted, etc., is, by the use of the word "and," erroneous. If the word "and" had been followed by *not* or the word *or* used instead of "and," it would have been proper; but as two other instructions given contain the same error, and all other instructions relating to the subject were refused, and defendant was convicted of a felony, the error was prejudicial.

7. ———: **Omission of Right of Self-Defense.** An instruction for the State which authorizes the jury to convict defendant regardless of

his right of self-defense, properly recognized as existing by another instruction given, is erroneous.

8. **INSTRUCTION: Assault upon Bad Man.** An instruction telling the jury that "in law it is the same offense to assault a bad man as to assault a good man" and that although the jury may believe that the person assaulted "was a person of questionable morals, this fact alone will not justify or excuse the defendant in assaulting him," is not only a reflection upon the intelligence of the jury, but reversible error.

Corpus Juris-Cyc. References: **Assault and Battery,** 5 C. J., Section 304, p. 780, n. 66; Section 325, p. 787, n. 77 New; Section 332, p. 791, n. 26; Section 346, p. 797, n. 98; Section 350; p. 801, n. 26; p. 802, n. 35 New. **Criminal Law,** 16 C. J., Section 1096, p. 565, n. 69 New; Section 2027, p. 796, n. 55; p. 797, n. 55, 57 New; Section 2490, p. 1047, n. 65. **Witnesses,** 40 Cyc., p. 2687, n. 93; p. 2690, n. 97.

Appeal from Audrain Circuit Court.—*Hon. E. S. Gantt,* Judge.

REVERSED AND REMANDED.

*Clarence A. Barnes* for appellant.

(1) The court erred in permitting the name of Dr. Jolley to be indorsed on the information on the second day of the trial, and near its completion. R. S. 1919, secs. 3849, 3889. There was no opportunity given the defense to meet or prepare for such testimony as was given by Dr. Jolley. That he was a most material witness is reflected in the jury's verdict. The State obtained an unfair advantage. State v. Lawson, 239 Mo. 591; State v. Brown, 163 Mo. App. 30; State v. Barrington, 198 Mo. 69. Defendant made his claim of surprise. State v. Webb, 205 S. W. 187. The verdict of the jury demonstrates that defendant's case was prejudiced by Dr. Jolley's testimony. State. v. Julin, 292 Mo. 273. (2) The defendant was entitled to testify with what intent he assaulted Underwood. State v. Palmer, 88 Mo. 573; State v. Banks, 73 Mo. 592; State v. Fletcher, 190 S. W. 317; State v. Tyle, 296 Mo. 427. (3) The court erred in excluding the testimony of

Bessie Welch, wife of the defendant, that the prosecuting witness had raped the defendant's wife on the second day of November, 1923, and thereafter approached her on two or three occasions inquiring if she had told her husband, and upon being informed that she had, said he would take care of her husband; and that following the occurrence of the rape, she told her husband from time to time portions of the experiences that she had undergone, and that he sought the society of defendant's wife and stopped her on the street and endeavored to converse with her. State v. Sanders, 106 Mo. 188; State v. Forsythe, 89 Mo. 667. (4) The court erred in permitting the prosecuting attorney to cross-examine on matters taking place in the office of the prosecuting attorney; and in not requiring the prosecuting attorney to submit to the attorney for the defendant the statement about which the prosecuting attorney interrogated the defendant which was in the possession of the prosecuting attorney, and being about matters which the defendant was not interrogated upon his direct examination. R. S. 1919, sec. 4036; State v. Hathorn, 166 Mo. 238; State v. Kyle, 177 Mo. 663. (5) When the assault is charged to have been made with a deadly weapon it must be established that the assault was in fact made with a deadly weapon. State v. Humphries, 5 Mo. 203; State v. Dunn, 221 Mo. 530; State v. Fletcher, 190 S. W. 321. (6) The court did not declare all the law of the case, in that the court did not define a "deadly weapon" and instruct the jury thereon, although his attention was called thereto by the defendant's refused instructions. The definition of a "deadly weapon" was correctly given in the instructions asked. State v. Miller, 264 Mo. 395; State v. Bowles, 146 Mo. 6; State v. Wonsong, 271 Mo. 50.

*Robert W. Otto,* Attorney-General, and *Harry L. Thomas,* Special Assistant Attorney-General, for respondent.

(1)    Evidence offered as to improper conduct between Underwood and the appellant's wife was properly excluded, it appearing from the evidence that the discovery of the same was of a date remote to the assault. State v. Stewart, 212 S. W. 857; State v. Privitt, 175 Mo. 207; State v. France, 76 Mo. 681.    (2)    Defendant is entitled to testify as to his intent in the commission of the crime charged. State v. Lyle, 296 Mo. 435.    However, the record shows that the defendant in the present case was accorded the right to deny any intention to kill.    The explanation offered as to intent was self-serving merely and was predicated upon inadmissible and improper evidence. (3)    There is no showing that defendant, by reason of failure to indorse, suffered prejudice. State v. Julin, 292 Mo. 273; State v. Stegner, 276 Mo. 438.    Witnesses not indorsed may be subpoenaed and sworn, R. S. 1919, sec. 3889; State v. Barrington, 198 Mo. 70; State v. Jeffries, 210 Mo. 324.    It affirmatively appears that the State did not purposely withhold the name of the witness or seek an undue advantage by delay. State v. Myers, 198 Mo. 225; State v. Pinson, 291 Mo. 328; State v. Pearson, 270 S. W. 348. No objection was made to the testimony of the witness. No affidavit of surprise was filed.    There was no application for a continuance.    There was no motion to quash the information.    State v. Robinson, 263 Mo. 318; State v. Bailey, 190 Mo. 257, 278.    (4)    Cross-examination of the defendant is not limited to a categorical review.    State v. Edelen, 288 Mo. 174; State v. Foley, 247 Mo. 638; State v. Lemon, 263 S. W. 186. (5)    The court properly defined a deadly weapon as "a weapon likely as used to produce death or great bodily harm" in its principal Instruction, numbered 3. Where the given instructions properly cover subjects raised in offered instructions, the latter need not be given. State v. Liolios, 252 S. W. 622; State v. Connors, 245 Mo. 477; State v. Kebler, 228 Mo. 367; State v. Linn, 223 Mo. 98; State v. Sebastain, 215 Mo. 86.    (6) Defendant's demurrer was properly overruled, the

evidence being sufficient. That a weapon is deadly may be inferred from the evidence of the result it produces. State v. Bowles, 146 Mo. 6; State v. Stewart, 278 Mo. 177.

RAILEY, C.—On February 26, 1924, the Prosecuting Attorney of Audrain County, Missouri, filed in the circuit court of said county a verified information, charging therein that appellant, in said county, on December 22, 1923, feloniously wounded one Carl Underwood, etc.

He was arraigned and entered a plea of not guilty. A trial was had before a jury and, on March 22, 1924, the following verdict was returned:

"We, the jury, find the defendant guilty of felonious wounding of Carl Underwood and we assess his punishment at imprisonment in the State penitentiary for a term of two years."

Motions for a new trial and in arrest of judgment were filed and overruled; allocution was had, judgment rendered and sentence passed upon appellant in conformity to said verdict. An appeal was granted defendant to this court.

We have carefully read the record and bill of exceptions herein, and find that counsel for the State have made a careful, accurate and substantial statement of the facts in the case and referring to the record where such testimony may be found. As a matter of convenience, leaving off the references to the pages of the record aforesaid, we hereby adopt said statement of the case as follows:

"About nine P. M. on Saturday, December 22, 1922, Carl Underwood and his wife were walking west on Monroe Street in Mexico, Audrain County, Missouri. They had been shopping and were preparing to return to their home. As they passed in front of the display window of the Lewis Moore store and a millinery store they met Walter E. Welch, the appellant, and his wife, who were coming from the opposite direction. Mrs. Underwood

311 Mo. Sup.—31.

was walking slightly in advance of her husband. They spoke to her and she returned their greeting, but her husband did not speak. She and her husband continued to walk west and had gone only a short distance when she heard the sound of a blow, and turned around to see the appellant beating her husband in the back and over the head with what appeared to be a club about a foot and one-half long. She did not see the first blow struck. Underwood attempted to get away, but was followed to a lamp post in the middle of the street by appellant who continued to strike at him until he missed a blow. The appellant then turned away and rejoined his wife. Underwood staggered on a short distance and fell on his face in front of what is known as the Ford garage, about thirty feet away. During the beating, Underwood did not raise his hand or try to strike the appellant. He received a three-inch wound in his forehead and three black bruises across his neck. He was conscious until they got him to bed, where he remained for about two weeks, being later confined to his room for five or six weeks. About twelve blows in all were struck, and the appellant appeared to have the club in both hands drawing it over the shoulder as if he were swinging an axe. Underwood was carrying two bundles when assaulted. None of the blows knocked him down. The assault was seen from a distance of about forty feet by one Ernest Garrett, who saw the appellant turn, run west toward Underwood and strike him. Underwood staggered, fell, got up and was hit again. This witness did not see anything in appellant's hand and testified that the first blow was from the side. The assault was also seen by three other witnesses who were within four or five feet of the men at the time. They saw appellant run past them from the east and going west, and saw him start hitting Underwood, who was then facing west. They testified that after the assault and before he fell on his face in front of the Ford garage, Underwood did not collide with anything. One of them testified that after the

beating appellant came back and said something to Mrs. Underwood, and another stated that Mrs. Underwood said to him at that time, 'Oh, he never done it.'

"Dr. G. J. Toalson stated that he examined Underwood on the 29th of December and that he was then nervous and restless and had a depression fracture three inches long on the top of his head. Underwood was then dazed and only momentarily conscious and grew worse for five days. His trouble appeared to be from a fractured blood vessel caused by the fracturing of his skull and he was in a very dangerous condition. The breaking of an abscess caused by the rupture later gave him relief and saved his life. No operation was performed.

"Carl Underwood, the injured party, testified that he saw the appellant and his wife as he passed, but that nothing was said and that he did not look up at appellant. They spoke to Mrs. Underwood and went on. He did not know how far he had gone when he was struck on the head. His next recollection was of the time when they put him in a car at the Ford garage. The appellant did not say anything to him before striking the blow. Underwood was carrying a bundle under each arm when struck, and did not put his hand to his overcoat pocket with the intention to convey to the appellant the idea that he had a gun in that pocket.

"The evidence on behalf of the appellant is, briefly, as follows:

"Three witnesses testified that the general reputation of Carl Underwood for truth, veracity and morals was bad. Appellant's wife, Mrs. Bessie Welch, stated that she was sixteen years of age on the 19th of December, 1923, and that she first met Underwood in Warren County in May, 1923. She later moved to Mexico in June of the same year. An offer was made on the part of appellant to show by her testimony that on the 2nd day of November, 1923, Carl Underwood took her in his car to the country and there had sexual intercourse with her; that thereafter he approached her on two or three oc-

casions, inquiring if she had told her husband, and upon being informed that she had he stated that he would take care of her husband; that following the occurrence she told her husband from time to time portions of her experience, and that it would be shown by the testimony of appellant that on the night of the difficulty Underwood grinned at the appellant, bringing to mind, and having the intent and purpose of bringing to mind, Underwood's improper relations with Mrs. Welch, and further that Mrs. Welch had completed her story to her husband only a few days before the assault, and that Underwood on several occasions between the second of November and the time of the assault had sought her society and had stopped her on the street. The offer, upon objection by the State, was rejected. Similar offers were made in connection with other witnesses.

"Dr. N. R. Rodes testified that he treated Underwood on the evening of December 22nd and on the following morning, and that Underwood was not at that time delirious. He did not find any facture and should have been able to find one from his examination had it existed. He could not tell that there had been any injury, but an X-ray photograph might show the injury. There might have been an injury of the inner skull without a fracture to the outer, and that an inner fracture often causes a blood clot on the brain which produces death unless the clot is absorbed.

"The appellant, testifying in his own behalf, stated that he had seen Underwood several times during the day of December 22nd, having seen him in business houses, around the square and at the home of one Jim Polsten. Mrs. Polsten is a sister of Underwood's wife and the mother-in-law of the appellant. He had also seen Underwood the day before the assault, when Underwood parked his car and whistled and jumped up and down in front of appellant's building. When they met just before the assault Underwood stepped a little ahead of his wife, smiled and sneered at the appellant, and put his hand in his right-hand overcoat pocket. 'The smile

went all over him' and he followed Underwood, caught his right arm and turned him about. Underwood then struck at him, and he returned the blow and hit in all only three times. He did not have any club of any kind, but did have a salt sack with a silver dollar and some small change in it. He did not know how he held this sack during the assault. As he turned away and passed Mrs. Underwood she said, 'He didn't do it.' On cross-examination he stated that Underwood was partially facing him and struck at him with the left hand as he whirled. He pursued Underwood about ten feet, and admitted that Underwood could not have known who he was before turning around, and that nothing was said by either of them. The day following the assault he told the prosecutor that he had hit Underwood with a sack containing some money and had thrown a silver dollar at him. On being recalled, the appellant denied that he intended to kill Underwood.

"In rebuttal for the State, Dr. F. J. Jolley identified an X-ray picture of Underwood's skull taken by him the day of the trial. Objection was made to the indorsement of Dr. Jolley as a witness on account of surprise, and to his testimony generally as being offered in rebuttal, but being in reality evidence in chief. Dr. Jolley testified that the X-ray photograph showed a fracture made within six months, the fracture being of both tables of the skull and showing star-like in the photograph.

"No rebuttal was offered by the appellant, but an offer was made to show by his testimony that his intention in striking Underwood was to punish him for attentions to appellant's wife."

Appellant, in his brief, has presented for our consideration seven assignments of error under his "Points and Authorities," numbered from one to seven inclusive, which we will proceed to consider in the order mentioned.

I. It is claimed that the trial court erred in permitting the name of Dr. J. F. Jolley to be indorsed on the information on the second day of the trial, and near its completion.

*Indorsement of Witness.*

Here is what occurred at the trial in respect to this matter: The prosecuting attorney asked leave to indorse on the information the name of Dr. J. F. Jolley, "for the reason that two physicians testified for the defendant that in their opinion there was no fracture of the prosecuting witness's skull." He said to the court, "Now, in rebuttal we offer to show by this physician, Dr. J. F. Jolley, that there is a fracture of the defendant's skull, both by his opinion and by an X-ray photograph." Counsel for appellant, in open court, orally objected to the indorsement of Dr. Jolley's name on the information, because his testimony would not be in rebuttal, etc. The prosecuting attorney, when asked by the court, when he first learned that he wanted Dr. Jolley as a witness, said: "I learned it this morning and after the trial had proceeded all day yesterday. I could not anticipate what these witnesses would testify to, and it is a proper matter of rebuttal, especially as it refers to expert testimony." The court overruled appellant's objection, and permitted the name of said witness to be indorsed on the information.

Under the circumstances aforesaid, the trial court was not guilty of an abuse of sound judicial discretion in permitting the above name to be indorsed on the information. [State v. Pearson, 270 S. W. 347, and cases cited; State v. Julin, 292 Mo. l. c. 272; State v. Stegner, 276 Mo. l. c. 438.] No affidavit of surprise was filed; no application for continuance was made, nor was the testimony of Dr. Jolley, when offered, objected to by defendant. The foregoing assignment of error is without merit and overruled.

II. It is contended that "the defendant was entitled to testify with what intent he assaulted Underwood." Appellant cites in support of this contention the following authorities: State v. Banks, 73 Mo. 592; State v. Palmer, 88 Mo. l. c. 573; State v. Fletcher, 190 S. W. 317; State v. Lyle, 296 Mo. 427.

**Intent.**

In the Banks case, the court held that defendant in a criminal case has the right to testify as to his intent "where the intent which prompts an act is always vitally important."

In State v. Palmer, 88 Mo. 1. c. 572, it appears that "the defendant had testified that when he struck he did not intend to kill the deceased." This court upheld his right to so testify.

In the case at bar, appellant testified as follows: "Q. At the time you struck Underwood did you intend to kill him? A. No, sir."

In State v. Fletcher, 190 S. W. 1. c. 321, Judge Walker said: "Counsel for defendant asked him on the witness stand whether he intended to kill the deceased when he struck him. Defendant answered, 'No.' Counsel for the State interposed an objection to the question, which the trial court sustained." We held that he was entitled to testify as he did, and that the ruling of the trial court was erroneous. The case, however, was not reversed, as he got the same fact in another form before the jury.

In State v. Lyle, 296 Mo. 1. c. 435, defendant was asked to state "with what intention he drove the Llewellyn car from in front of the Baptist church." The court refused to permit him to testify as to any intent whatever, and we held it was error. The court did not call upon defendant, as in this case, to state to the court, outside the presence of the jury, what his intent was. In the present case, the defendant testified before the jury that he did not intend to kill Underwood. He was not asked if he struck Underwood in self-defense, or under great excitement without intending to inflict on him serious injury, but here is what the defendant informed the trial court, without the presence of the jury, he desired to give as testimony in the case: "Q. When you struck Carl Underwood with what intent did you strike him? A. Only to punish him enough so he would let my wife alone."

It is manifest that defendant was illegally attempting to get before the jury the fact that Underwood, on

some former occasion, had had sexual intercourse with his (defendant's) wife, and that he was justified in punishing him therefor. We are of the opinion, that the proffered testimony, supra, on the facts in evidence, was properly excluded by the court. [State v. Stewart, 212 S. W. l. c. 857 and cases cited; State v. Privitt, 175 Mo. l. c. 231; State v. France, 76 Mo. 685.]

III. The assault made by defendant on Underwood occurred about December 22, 1923. Appellant complains of the court's ruling in refusing to permit him to prove by his wife, Bessie Welch, that on November 2, 1923, de-

Justification: Intercourse with Wife.

fendant took her to the country and had sexual intercourse with her at that time, while she was under sixteen years of age, etc. The above, and other attentions alleged to have been shown by Underwood to defendant's wife prior to the date of the injury, were properly held by the court to be too remote in point of time, and in view of the facts disclosed by the record, constituted no justification for the assault complained of in this case. The authorities cited by appellant have no application to a case of this character. The above assignment is accordingly overruled. [See authorities last cited.]

IV. The trial court is charged with error in sustaining the right of the prosecuting attorney to interro-

Cross-Examination of Defendant.

gate defendant with reference to statements made by him in the office of said attorney, and about which he was not interrogated upon his direct examination. This assignment is clearly without merit. Defendant, on direct examination, testified that when he hit Underwood he had in his hand "a little salt sack with a little money in it." The cross-examination complained of related to the contents of the same sack, and no error was committed in respect to said matter. [State v. Lemon, 263 S. W. 186; State v. Edelen, 288 Mo. l. c. 174; State v. Foley, 247 Mo. l. c. 638.]

V. It is insisted by appellant that his demurrer to the evidence should have been sustained on the ground that it did not show that Underwood was as-saulted with a deadly weapon. The evidence on the part of the State tends to show that the assault was made with a club. The evidence heretofore set out discloses that there was a three-inch gash on the head of Underwood, made by defendant, and that in-juries were inflicted of a dangerous character. It may be inferred from the evidence that a weapon is deadly by the result it produces. [State v. Stewart, 278 Mo. l. c. 188; State v. Bowles, 146 Mo. 6.] The demurrer to the evidence was properly overruled.

*Deadly Weapon.*

VI. It is contended that the court failed to prop-erly define a "deadly weapon." Instruction 3, given by the court, reads as follows:

"The court instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt, that on or about the 22nd day of December, 1923, at the County of Audrain and State of Missouri, the defendant, without any just cause or provo-cation *and* in the defense of his person, as set forth in instructions numbered one and two herein, did then and there feloniously, wilfully, on purpose and of his malice aforethought make an as-sault upon one Carl Underwood with a club, and that said club was a deadly weapon, that is to say, a weapon likely, as used, if you find the same to have been used, to produce death or great bodily harm, and that the said defendant did then and there with said club feloniously, wilfully, on purpose and of his malice aforethought strike and beat him, the said Carl Underwood, and did then and there and thereby give to him, the said Carl Underwood, in and upon the head, neck and body of him, the said Carl Underwood, with the club aforesaid, certain wounds, with the felonious intent then and there him, the said Carl Underwood, feloniously, wilfully, on purpose and of his malice aforethought to kill and murder, then you will

*Assault in Defense of Person.*

find the defendant guilty of assault, with intent to kill with malice aforethought and assess his punishment at imprisonment in the penitentiary for a term of not less than two years.

"The word 'feloniously' as used in the information and in the instructions herein means wickedly and against the admonition of the law.

"The terms 'wilfully' and 'on purpose' mean intentionally and not by accident.

"The term 'malice aforethought,' as used in the information and in these instructions, means that one intentionally does what he knows to be a wrongful act, and that he has thought of it and determined to do it for any length of time beforehand, however short."

This instruction is erroneous in using the italicized word "*and*." It would have been proper, if "*and*" had been followed by "not," or had the word "and" been changed to "or."

Instructions 5 and 6, given by the court, contain the same error as Instruction 3, pointed out supra. As the instructions of defendant relating to the above subject were refused, and no other instructions given properly declaring the law thereon, we are of the opinion that a new trial should be granted, as defendant was convicted of a felony.

VII.   In his motion for a new trial appellant charges the court with error in the giving of Instruction 4, which reads as follows:

"The court instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt that the defendant did make an assault upon Carl Underwood with intent to kill him, the said Carl Underwood, or to do him greatly bodily harm, but that such assault, if made, was made

Self-Defense.

without malice aforethought or that the weapon used, if you find the same to have been used, was not a deadly one, or one likely as used, if you find the same to have been used, to produce death or great bodily

harm, you will find the defendant guilty of assault with intent to kill without malice and ·assess his punishment at imprisonment in the penitentiary for a term of not less than two years and not exceeding' five years, or in the county jail not less than six months, or by a fine not less than $100 and imprisonment in the county jail not less than three months, or by a fine not less than $100."

This instruction leaves out of consideration the right of defense claimed by defendant, and recognized as existing, in the State's instruction numbered one. We are of the opinion that Instruction One. properly declares the law. However, Instruction Four above mentioned authorized the jury to convict the defendant on the facts mentioned, regardless of his right of self-defense, and without any reference to said instruction.

VIII.   Instruction numbered 7, given by the court, is assaulted in the motion for a new trial. It reads as follows:

"The court instructs the jury that in law it is the same offense to assault a bad man as to assault a good
**Bad Man.** man, and although the jury may believe from the evidence that the prosecuting witness, Carl Underwood, was a person of questionable morals, yet this fact alone will not justify or excuse the defendant in assaulting said Underwood, if he did assault him."

The giving of this instruction was held to be reversible error in State v. Rozell, 225 S. W. 1. c. 934, and the ruling in the Rozell case later followed in State v. Archie, 301 Mo. 392. Aside from what has been heretofore said of this instruction, we think it is a reflection upon the intelligence of a jury to give it, as we are loath to believe that any jury would convict a defendant because he was a bad man.

IX.   Other matters are discussed in the briefs of counsel which are not likely to occur on a re-trial of the

case and, hence, we have not considered the same. On account of the errors heretofore pointed out, the cause is reversed and remanded for a new trial. *Higbee, C.*, concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.