THE STATE v. JOE FALCO, Appellant.—51 S. W. (2d) 1030.

Division Two, July 1, 1932.

*Louis A. Reale* and *Charles V. Benonti* for appellant.

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Assistant Attorney-General, for respondent.

WHITE, P. J.—January 28, 1931, in the Circuit Court of Jackson County, the appellant was found guilty of arson and sentenced to four years' imprisonment in the penitentiary. Appellant with his

wife, Mary Falco, lived at 3517 Thompson Avenue in Kansas City. September 8, 1930, the house in which they lived was destroyed by fire. There was a sudden explosion which wrecked the building and damaged other buildings in the neighborhood.

The indictment upon which the defendant was convicted charged Joseph Falco and Mary Falco with feloniously setting fire to the building. Mary Falco was acquitted.

The main point relied upon for reversal by the appellant is that the evidence was not sufficient to make out a submissible case. That makes it necessary to review the evidence at some length.

I. The Falcos rented the place and furnished it with their own furniture; they had previously lived in Euclid Street where they had their household goods insured for $2500. In January, 1930, the insurance was transferred to the address 3517 Thompson Street, the old policy canceled and a new policy for $3,500 written. The evidence of the agent who wrote the policy was that the household goods were well worth the face of the policy. The fire was put out before the furniture was destroyed but the house was a total wreck, and some pieces of furniture were found which did not resemble the type of furniture which had been insured. In January before the fire the evidence showed that Falco had hauled certain household furniture in a moving van away from the house.

Falco drove a dark green Hudson sedan. There was a space between the house and the one next door, 3519 Thompson Avenue. He was accustomed to park his car in that space. It was not an improved driveway, but about ten feet wide; it was sometimes mentioned as "the yard."

About two days before September 8th, when the fire occurred, witnesses saw Joe Falco carrying a five-gallon can from his car to the house. He went to the rear of the house. He was also seen carrying jugs. Two witnesses testified to the carrying of the cans. On the evening of September 8, 1930, a dark green car was backed out of the improvised driveway. Gibson Langsdale, sitting on the porch at 3518 Thompson Avenue, directly across the street, knew the Falco car which he had seen driven and parked in that place; he could not tell who was driving it at that time. A very few minutes later the explosion and the fire occurred.

Marin Waggoner, sixteen years old, saw Joe Falco the day before the explosion take a five-gallon can out of his car and walk to the rear of his house, and on the evening of September 8th, about fifteen minutes before the explosion saw appellant's car in the driveway, and about ten minutes before the explosion recognized the voice of Mary Falco saying: "Get those damn kids out of here."

Fred Nute, living at 3520 Thompson Avenue, testified that he saw Mary Falco at her home about five o'clock in the evening. That shortly before the explosion which occurred about nine o'clock he heard her voice say, "Hurry up! Get those damn kids out of here."

Leo L. Fennelly was visiting at 3519 Thompson Avenue and saw the dark enclosed car driving out of the improvised driveway about nine o'clock, and about five minutes before the car backed out he heard a woman's voice saying excitedly: "We have got to get out of here."

Several others living in the neighborhood, across the street and near this property, testified to the explosion and the fire. Just before the explosion there was a strong odor of gasoline and also of gas. A number of the witnesses had noticed it. One testified that the nearer you got to the Falco home the stronger it smelled. The explosion was of sufficient force to knock out the walls. It broke the windows; the house seemed to collapse. Other houses in the neighborhood were damaged.

In examining the ruins after the fire it was shown that the natural gas pipe leading from the meter to the hot water burner was disconnected, though the threads seemed to be intact. Just before the fire there was an odor of natural gas as well as of gasoline.

Falco and his wife both testified that they were away that evening. Joe Falco himself stated that he was not at the house after three o'clock; that he heard of the explosion when he was somewhere else. Mrs. Falco said that with the four children she had gone to the home of Joe Cipolla and while there she was notified of the fire and went home.

We think the evidence was sufficient to make out a submissible case: the defendants alone had the opportunity; there was present a motive, to collect the insurance; the preparations in moving the property; the absence of any attempt to show in defense that any other person had access to the house. The evidence showed that no one had access to the house. Mrs. Falco swore that the house was locked up when she left. She was present ten or fifteen minutes before the explosion occurred; at least two witnesses recognized her voice in hurrying to get the children out of the house. The car was driven away presumably with Mrs. Falco and the children in it. The strong odor of gasoline, the evidence indicating something in cans was carried into the house a day or two before the explosion; the odor of gas and the disjointed gas pipe; the absence of the furniture which apparently had been insured; the hurried going away with the children,—all this was sufficient to make out a submissible case.

The indictment is as follows:

"The Grand Jurors of the State of Missouri, duly summoned from the body of said County of Jackson, being duly impaneled, sworn and

charged to inquire within and for said County, upon their oaths presents and charge that on the 8th day of September, 1930, at the County of Jackson and State of Missouri, Joseph Falco and Mary Falco, whoes christian names in full are unknown to said Grand Jurors, late of the County aforesaid, did then and there willfully, maliciously, unlawfully and feloniously set fire to and burn a certain house located at 3517 Thompson avenue in Kansas City, Jackson County, Missouri, the said house being then and there the property of one Bertha E. Franke, against the peace and dignity of the State.

"JAMES R. PAGE,
"Prosecuting Attorney."

It is framed under Section 4039, who provides that "any person who shall willfully set fire to and burn or cause to be burned any house . . . not mentioned in the preceding sections . . . being the property of another . . . shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the penitentiary for a term of not less than two years nor more than five years."

The preceding sections provide penalties for setting fire to a dwelling house, defining a dwelling house, and setting fire to a shop, office, warehouse, factory, etc.

II. It is argued that the proof shows that the building burned was a dwelling house within the terms of Section 4036, not within the terms of Section 4039, which provides a penalty only for buildings not mentioned in the preceding sections.

Section 4451, Revised Statutes 1929, provides that where an indictment charges an offense consisting of different degrees the jury may find the defendant guilty of any degree of the offense inferior to that charged.

It was held in State v. Rudman, 327 Mo. 260, 37 S. W. (2d) l. c. 411, that when a defendant had been charged with arson in the first degree he could not complain because the jury found him guilty of arson in the lesser degree. He was found guilty of a lesser offense than that charged. That case occurred under the statute before the degrees of arson were abolished by the Act of 1929 as it appears in Sections 4036, 4037, 4038 and 4039, Revised Statutes 1929.

While the statute has abolished the *degrees* of arson, specifically designated as such, still it retains in effect the different grades of arson according to the character of the buildings set on fire. The defendants in this case were charged and convicted of a lesser offense than the evidence showed. We think Section 4451 would apply to it. The error, if any, was in the defendant's favor. If it may be called a variance the trial court did not regard it as a material variance. The variance between the charge and the proof is

not greater than it would have been before the degrees of arson were abolished.

Further it may be said that there was no objection to the information and no complaint of variance shown by the record until after the verdict when the appellant filed his motion for new trial.

III. It is claimed further that the court erred in giving several instructions on conspiracy on the theory that Joe Falco and his wife Mary Falco conspired together to cause the fire. The only grounds upon which these were objected to were that the evidence failed to show any conspiracy. The evidence does indicate that the defendants were acting together although the wife may not have participated in preparing for or setting the fire, or even have consented to it. Instruction 2, given on behalf of the State, told the jury that if the defendants Joe Falco and Mary Doe Falco either acting alone or knowingly acted in concert with each other, etc., they should find them guilty. The form of verdict given to the jury authorized the finding of one defendant guilty and the other not guilty. The jury in the verdict found Joe Falco guilty and Mary Falco not guilty, and therefore must have found that there was no conspiracy. If there was error in giving instructions relating to conspiracy, the appellant was not harmed by it. The jury must have found that he set the fire.

IV. Appellant makes a further point that if there was no direct evidence that Joe Falco was at the house a few minutes before the explosion, when his wife talked about getting the "kids out of here," that he could therefore only be accessory before the fact; that he could not be guilty unless his wife also was guilty; that since he was not present she must have set it. There was sufficient circumstantial evidence to warrant the finding that Joe Falco set the fire. All the preparations appear to have been made by him: the moving of the furniture; the bringing in of the cans, inferentially filled with gasoline; the presence of his car in the improvised driveway a few minutes before the fire, the exclamations of his wife calling to somebody that the "kids" must be gotten out. That apparently was not addressed to the children but to someone who drove that car. There was no suggestion in the evidence that anyone excepting himself had authority to drive appellant's car. Besides if the wife set the fire by his direction he is guilty. An accessory may be charged as a principal.

V. Appellant objects to the verdict which is as follows:

"We the jury find the defendant Joe Falco guilty of Arson in the Second Degree and assess his punishment at Four Years (4) in

988

the State Penitentiary and we further find the defendant Mary Doe Falco not guilty.

"CHARLES E. COCKRILL,
"Foreman."

The objection is that it found the defendant Joe Falco guilty of arson in the second degree, when the degrees of arson had been abolished. If the verdict had said only "that the jury find the defendant Joe Falco guilty of arson" it would have been in strict accord with the indictment. A general verdict is always sufficient if responsive to the information. [State v. Connor, 318 Mo. 592, 300 S. W. (2d) 685, l. c. 687; State v. Martin, 230 Mo. l. c. 691, 132 S. W. (2d) 595.] Since degrees of arson are abolished the use of the words "in the second degree" are meaningless. They may be treated as surplusage.

In State v. Bishop, 231 Mo. l. c. 415, 133 S. W. 33, it was held that in a verdict of guilt for felonious assault the words "with malice" were unnecessary, superfluous. It was said in 16 Corpus Juris, page 1101:

"A general verdict, which is responsive to the issues, will not be reversed solely because it finds facts not embraced in the issues; such findings may be rejected as irresponsive and therefore surplusage."

The note to that passage contains many citations. It was held in State v. Glass, 318 Mo. 618, 300 S. W. 691, that an instruction containing the expression "manslaughter in the fourth degree" after degrees of manslaughter were abolished, was not error. The expression could be rejected as surplusage and would not mislead the jury. If such an expression in the instruction may be rejected as surplusage, then such unnecessary words in a verdict could be rejected as surplusage. This is not a case where a different offense is proven from that charged, as in the case of State v. Hancock, 320 Mo. l. c. 331, 7 S. W. (2d) 273.

The judgment is affirmed. All concur.