STATE v. FORREST HENDERSON, Appellant.—No. 40341.—204 S. W. (2d) 774.

Division Two, October 13, 1947.

*John C. Pope* for appellant.

*J. E. Taylor,* Attorney General, and *David Donnelly,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted in the circuit court of Wright county of felonious assault with a deadly weapon, malice aforethought and an intent to kill, upon Clyde Melvin in violation of Sec. 4408, R. S. 1939-Mo. R. S. A. The appellant and his wife were jointly charged, but at the close of all the evidence the trial court directed a verdict for the appellant's wife on the legal presumption that she acted under the influence and coercion of her husband; and submitted the case against the appellant husband alone. The jury found him guilty and assessed his punishment at imprisonment in the penitentiary for three years and one day.

Appellant has filed a transcript of the whole record, including a bill of exceptions containing all the evidence, but has not filed a brief. However his counsel has addressed a letter to our clerk calling attention to four decisions of this court, which he says support his contention that the State's main instruction was erroneous. We shall return to that point later. Other than that our review will be limited to the record proper and the assignments of error in appellant's motion for new trial, State v. Weston, 202 S. W. (2d) 50, 51(1). Before we deal with these the facts should be stated briefly.

The prosecuting witness, Clyde Melvin was a farmer probably past middle age (a veteran of World War 1). For the preceding year and a half he had been suffering from an arthritic and nervous condition which affected his ability to walk. During that time he had been under treatment at the hospital of Drs. Schlicht in Niangua, and had returned to his farm only a month before the assault.

He testified that on the date of the assault he had gone from his home to a pond on his farm to shoot frogs with a pistol which he openly carried stuck in his belt. Thereafter he proceeded to his rural mail box on the public road, his course being parallel to and inside of the highway fence. When he had got opposite the home of a neighbor, Barker, on the other side of the road, he saw the appellant

Henderson and wife hurrying toward him through the woods. Appellant told Mrs Barker to "Get in the house;" that, "Me and Clyde (the prosecuting witness) is going to have it out." Then appellant and his wife got over or through the fence, and the former upbraided him for taking the rope and bucket from a school house well near by, where appellant had been getting water. Melvin admitted it and said both belonged to him.

Thereupon appellant hit Melvin with his fist and knocked him to the ground, and while he was prostrate beat him in the face, head and neck with iron knucks. At that time appellant discovered the pistol, which he declared Melvin carried concealed under his shirt, and said to his wife, "God Damn, Anne, here is a gun." She answered, "Get it," and appellant seized it and said, "We will just kill the God Damn'd s-o-b." Thereupon appellant began stomping Melvin.

Continuing, Melvin testified the appellant's wife beat him with "a broom stick cut off just like a billy club, about the same length, I guess, about two feet." Just after the assault another witness, Wilson Shaddy, saw appellant's wife at the scene of the assault with a stick in her hand about two or three feet long and approximately an inch in diameter. Melvin testified the appellant's wife, using the stick—"was beating me up and down, through the ribs, as he (appellant) was working on my face, and holding my hands down." The witness' shirt was torn up and buttons were later found at the scene of the assault.

The injuries inflicted on Melvin were: a gash, about two inches long over his left eye; considerable swelling over the left side of the head and left eye, closing the latter; some swelling over the right eye; some bruised areas on the side of the neck; a large bruised area above the left hip; some scratches or stripes across the chest; abraded or scuffed areas over the abdomen; fractures of the third and fourth ribs on the right side; and an incomplete fracture of the right side of the lower jaw.

The appellant's defense was self-defense. He and his wife both testified that during the dispute about the well bucket and rope, Melvin said he was from Kentucky, called appellant "a yellow s-o-b" and reached for his pistol, whereupon appellant knocked Melvin down and scuffled with him until his (appellant's) wife had got possession of the pistol. Both denied appellant used any means of defense except his fists. The wife admitted picking up a stick in self-defense, after the fight was over, when Mrs. Melvin came up, but said she never used it. The three doctors who had examined Melvin after the assault (using X-Rays) would not say the injuries described *must* have been made by some other instrument than a human fist. So much for the facts.

▇ Notwithstanding the repeated holdings of this court under Sec. 4125, R. S. 1939-Mo. R. S. A., several of the assignments of error in appellant's motion for new trial are so lacking in detail and particularity that they fail to preserve anything for review. They are: Assignment 1—that "the verdict is against the law, as declared by the instructions given by the court"; Assignment 2—that "the verdict is against the evidence . . ."; Assignment 4—that "the court erred in giving instructions numbered 1, 2, 3, 4." None of these assignments specify the error complained of: they merely state conclusions.

Out of order, we revert here to the aforementioned letter from appellant's counsel to our clerk, citing four decisions which he says support his contention that the State's "main" instruction was erroneous. This letter was written on March 17, 1947, almost four months after the verdict was returned on November 22, 1946. Sec. 4125 provides that motions for new trial in criminal cases must be filed within four days after the return of the verdict; and that the trial court may extend the time for 30 days, but no further. So it is clear that counsel's belated letter cannot be treated as an amendment or addition to his original motion for new trial. At most it can only be regarded as in the nature of a brief or suggestion on the motion for new trial already filed. And since Assignment 4 in the motion complaining of the instructions itself was insufficient, it necessarily follows that the letter cannot be considered in passing on that assignment. Obviously, the appellant's brief in a criminal case cannot supply deficiencies in his motion for new trial. However the decisions cited in the letter will be noticed later in another connection.

▇ We have just ruled in the second preceding paragraph that the part of Assignment 2 there quoted from appellant's motion for new trial, was insufficient. But there was another clause in that assignment which read: "and there is no substantial evidence to support the verdict." We have always treated such assignments as valid. So we proceed to consider it on its merits.

▇ Specifically, the information charged a felonious assault with malice aforethought and an intent to kill, "with a deadly weapon, to wit, a large club, or stick of wood, and that (his) hands and feet." This charge obviously was brought under Sec. 4408, R. S. 1939-Mo. R. S. A., and not under Sec. 4409: because the former requires the use of a "deadly weapon or any other means or force likely to produce death or great bodily harm," and also requires "malice aforethought"; whereas Sec. 4409 does not. These sections have been recently discussed in State v. Watson, 356 Mo. 590, 202 S. (W. (2d) 784, and State v. Null, 355 Mo. 1034, 199 S. W. (2d) 639.

The trial court submitted the case under both sections. Instruction No. 2 was drawn under Sec. 4408. It required malice aforethought and use of a "dangerous and deadly weapon, to-wit: a

stick of wood, and his hands and feet." It did not include the words "a large club" appearing in the information. Furthermore, it prescribed the punishment at "imprisonment in the penitentiary for not less than two years," as fixed by Sec. 4408. Instruction No. 3 omitted the requirements of malice aforethought and a finding of use of a deadly weapon. And it prescribed the punishment fixed by Sec. 4409, namely, a penitentiary sentence of not more than five years or a jail sentence or fine.

The jury's verdict found the appellant "guilty as charged of felonious assault with malice aforethought," and assessed his punishment at imprisonment in the State penitentiary for a term of 3 years and 1 day. This verdict necessarily was under Sec. 4408, in view of the finding of malice aforethought.

Was the evidence sufficient to support that verdict? It will be remembered that while the prosecuting witness, Melvin, testified the appellant used knucks in assaulting him, that issue was not submitted. Neither the information nor instruction No. 2 mentioned knucks. And while both did predicate appellant's assault upon Melvin on the use of a "stick of wood," yet all the evidence showed that the stick was not used by the appellant, but only by his wife. Further, both the information and instruction specified the appellant employed his hands and feet in making the assault, and the evidence substantiated that.

So it would seem the questions to be decided under this assignment are: (1) can the use of the stick of wood by appellant's wife be imputed to him; (2) was it such an instrument that the jury reasonably might have found it was a "deadly weapon" or a "means or force likely to produce death or great bodily harm," within the meaning of Sec. 4408, supra; (3) or if not, might the jury have found the same was true respecting appellant's use of his hands and feet.

On the first question, the learned Assistant Attorney General's brief cites several decisions[1] which recognize and follow the rule that if a wife commits a crime in the presence of her husband, the law presumes it was the result of his constraint or coercion. In another case, State v. Falco, 330 Mo. 982, 987(6), 51 S. W. (2d) 1030, 1033(4), where a defendant husband and wife were charged with arson and it was not entirely clear whether the husband or wife set the fire, the jury acquitted the wife but convicted the husband, as here. But the decision held: "Besides, if the wife set the fire by his direction he is guilty. An accessory may be charged as a principal." In the instant case the evidence is clear that the appellant and his wife were acting together in committing the assault, and that he was the

[1]State v. Miller, 162 Mo. 253, 259(1), 62 S. W. 692, 694(1), 85 Am. St. Rep. 498; State v. Murray, 316 Mo. 31, 39(13, 14), 292 S. W. 434, 438(22); State v. Patton, 347 Mo. 303, 307-8(2,3), 147 S. W. (2d) 467, 469(2).

1078

instigator and leader of it. We have no doubt that he can·be charged with her acts.

On the next question—whether the "stick of wood" was such an instrument as the jury might reasonably have found to be a deadly weapon. The prosecuting witness, Melvin, described it as "a broom stick cut off just like a billy club, about the same length, I guess, about two feet." His wife said it was "a club, stick of some kind." Another witness, Shaddy, testified the stick held by the appellant's wife just after the assault was "about two or three feet long and approximately an inch in diameter." There was no evidence as to its weight, but the evidence does show it was used vigorously, and not broken by such use.

The Attorney General's brief cites State v. Bennett (Mo. Sup.), 87 S. W. (2d) 159, 162-3(7, 8), which in turn cites State v. Dunn, 221 Mo. 530, 541(1), 120 S. W. 1179, 1182(3) where the lethal weapon was described as a heavy piece of wood, 22 inches long, $3\frac{1}{2}$ inches wide and $1\frac{3}{4}$ inches thick. The decision held it was not error for the instruction to *assume* it was a deadly weapon. In State v. Fletcher (Mo. Sup.), 190 S. W. 317, 319, 321(10), where the club used in an assault was 3 feet long and $2\frac{1}{2}$ inches in diameter, the opinion held it was a dangerous and deadly weapon·*per se*. And in State v. Welch, 311 Mo. 476, 489(6), 278 S. W. 755, 758(5, 6), the State's evidence showed only that the assault was committed with a club about $1\frac{1}{2}$ feet long—(no other dimensions given). But it inflicted a 3 inch gash on the prosecuting witness' head, and the decision held the nature of the wound was sufficient to support an inference that the club was a deadly weapon.

In 11 Words & Phrases (Perm. Ed.) pp. 129, 132, giving judicial definitions of a "deadly weapon," and specifically of a "club or stick", a number of cases are cited. Some of these, particularly those from Texas, do not go as far as ours do. But in general all agree that the classification of such weapons as "deadly" may depend in part on the *effect* produced by them, and the strength of the assailant who wields them. And we think it can be further affirmed that the strength and vitality of the victim of the assault also may be considered. For instance an assault on a child or a weak and defenseless person with a given weapon might be likely to produce death or great bodily harm, whereas the contrary would be true as against a vigorous adversary.

Considering the facts that the prosecuting witness Melvin here was weak, prostrate and vulnerable; that he was beat in various ways by both the appellant and his wife at the same time; and that he received many serious injuries; we hold the jury reasonably might conclude the stick used was a deadly weapon, although it was not quite as large as those involved in the Dunn and Fletcher cases referred to in the second preceding paragraph; and notwithstanding

the physicians who testified were unwilling to say the injuries Melvin received *must* have been made by some other instrument than a human fist.

The decisions cited in the letter of appellant's counsel, heretofore mentioned, are listed below.[2] For the reasons already stated, we cannot consider them in a challenge of the instructions, but only insofar as they might be thought to bear on the sufficiency of the evidence. In the Clancy case the weapon proven was a "Bevo" bottle. There was no proof as to its dimensions or weight. In the Stubblefield case the evidence merely showed "a knife" was used, without describing or exhibiting it. In neither case were the injuries serious. In the Rongey case the instrumentality alleged was a pair of large heavy shoes, and there was no proof whatever that the defendant wore such shoes. In the Ruddle case the charge was that the defendant used his fists and feet, but no proof as to the kind of shoes he wore. Also the injuries inflicted were superficial. In the Johnson case the facts were substantially the same. And the defendant was convicted under Sec. 4409, instead of Sec. 4408, but even then this court reversed and remanded the cause holding the offense was only common assault. These decisions do not help appellant.

What we have said about appellant's challenge of the instructions being ineffectual, is subject to another qualification, which we had almost overlooked. The second clause of Assignment 3 in his motion for new trial did complain that the State's instruction No. 2 told the jury "the weapons used were deadly *per se.*" On that point what the instruction said was [italics and parentheses ours]: "The Court instructs the jury that if they believe and find from the evidence that the defendant Forrest Henderson did . . . make an assault upon (Melvin) with a dangerous and deadly weapon, to-wit: a stick of wood, and his hands and feet, and if you further find"—etc.

The word "to-wit" thus used was a videlicet explaining or qualifying the preceding words "dangerous and deadly weapon," as if the words "that is to say" had been inserted. State v. Scovill (Mo. App.), 15 S. W. (2d) 931, 935(7); 41 Words & Phrases (Perm. Ed.) 711. But it has been held in at least two cases that that did not mean the instrumentality was a deadly weapon as a matter of law. The instruction initially required the jury to believe and *find from the evidence* the facts hypothesized therein, one of which was that the stick was such a weapon. State v. Grayor, 89 Mo. 600, 605(2), 1 S. W. 365, 366(2); ibid., 16 Mo. App. 558(1). See also, Phippin v. Mo. Pac. Ry. Co., 196 Mo. 321, 347-9(6), 93 S. W. 410, 417(4).

[2]State v. Clancy, 225 Mo. 654, 658-9(1), 125 S. W. 458, 459(1); State v. Stubblefield, 239 Mo. 526, 530(1), 144 S. W. 404, 405(1); State v. Rongey (Mo. Sup.), 231 S. W. 609, 611(1-4); State v. Ruddle (Mo. Sup.), 270 S. W. 105; State v. Johnson, 318 Mo. 596, 604(4), 300 S. W. 702, 704(8).

■ The next assignment in the motion for new trial is based on the following incident. The motion recites that when court convened on the second day of the trial the appellant and his wife were 30 or 40 minutes late. The bill of exceptions further states a witness was on the stand, and both the motion and the record show the court instructed the sheriff to call the defendants and their bondsmen and to notify the bondsmen to bring in the bodies of the two defendants or forfeit their recognizances. This was done by the sheriff in open court in the presence of the jury. The defendants not appearing, their bonds were ordered forfeited. Within five minutes they appeared, whereupon the order forfeiting their bonds was set aside and the trial proceeded.

The motion for new trial alone further alleges this action of the court in the presence of the jury was highly prejudicial to the appellant's rights, and that he did not know it had been taken, in consequence of which he was deprived of an opportunity to explain his absence before the jury. It further alleges that during these proceedings the sheriff informed the court that appellant had been "seen coming toward the court room and would be there in just a minute or two," but nevertheless the court entered the forfeiture.

Nothing is better settled than that unverified allegations in a motion for new trial in a criminal case do not prove themselves and cannot be considered unless substantiated by the record. See many cases cited in 9 West's Mo. Dig., sec. 956, p. 544. Otherwise the motion must be verified by affidavit, and this one was not. If, as the motion admits, the defendants were 30 or 40 minutes late in court, without explanation, and a witness was kept waiting on the stand, the court was justified in forfeiting their recognizances, Sec. 3973, R. S. 1939-Mo. R. S. A.

The only case we have found dealing with a situation resembling this, is State v. Strickland (Mo. Sup.), 289 S. W. 557, 558 (4), where complaint was made on the forfeiture of a recognizance, but the record showed it was after the jury had retired to consider their verdict. The decision held the incident was "trivial". Here, the jury had not retired. But we see nothing prejudicial in the trial court's action even though the jury was present. The bill of exceptions states the defendants appeared five minutes later; the forfeitures were set aside; the trial proceeded; and at the end the appellant's wife was discharged. In 16 C. J., p. 835, sec. 2108, the law is thus declared: "It is proper for the court, in the presence of the jury, to proceed against or to punish for contempt the counsel for defendant, a witness, or a third person, who is guilty of such offense during the course of the trial." We rule this assignment against appellant.

■ The sixth assignment in the motion for new trial complains that on the voir dire examination of the jury panel the court inquired whether any of them knew either of the defendants; and that

one (later) female juror remained silent. The motion states the appellant learned after the verdict that the juror was well acquainted with his (appellant's) wife; that had that fact been known to him at the time he would have challenged the juror; and ▮ that the failure of the juror to make known her acquaintance with appellant's wife prejudiced his rights. As already stated, the motion for new trial is not verified. And there is not a word in the record proper or bill of exceptions to substantiate the assignment. We must overrule it.

▮ The seventh and final assignment in the motion for new trial charged misconduct of a female juror during the recess between the first and second days of the trial. At that time the evidence for the State had already been introduced, but that for the defendants had not. It is alleged the juror talked about the case in the presence of divers persons; and expressed the opinion that the defendants were guilty and matters looked pretty bad for them. The unverified motion states these facts did not become known to appellant until after the trial was over.

The court permitted appellant to introduce evidence on this assignment. A Mrs. Morton, who operated a millinery store, testified the juror came in, and upon being asked about the trial and whether it amounted to much, answered that they had only heard the Melvin (State's) side, and "it was pretty strong." The witness admitted the juror didn't say she had made up her mind; nor did she express an opinion as to the guilt or innocence of the defendants. Norma Blackwell testified she was present and heard the other two women talking about a case in court, but otherwise didn't know what they said. The juror admitted the conversation but denied making the statement. She said she answered the milliner: "I don't know, I have only heard one side of the evidence, and I don't know a thing about the Henderson side." The trial court heard all this testimony and saw the witness. We can see no reason for interfering, on the showing made. State v. McGee, 336 Mo. 1082, 1092(b), 83 S. W. (2d) 98, 104b(7).

We find no error in the record proper, or elsewhere, and the judgment and sentence are affirmed. All concur.