THE STATE v. JACK MURRAY and EDNA MURRAY, Appellants.

Division Two, December 20, 1926.

1. **JUROR: Citizenship.** A man who was born in the United States and whose mother was an American is an American citizen, though in his childhood he lived for a few years in England.

2. ———: **Qualifications: Questioned after Examination.** If a juror is not questioned as to his qualifications at the time he is being examined on his **voir dire**, it is too late to raise objections afterwards.

3. ———: ———: **Examination: Concealment.** A juror on his **voir dire** examination was asked whether he knew any reason why he could not serve as a juror, and answered, No. On the previous day he had been examined as to his qualifications in another case, and being challenged the court excused him, saying: "I think that under our statute you would not be competent to serve, and Mr. Sheriff, you advise Mr. Tobin up there to excuse him from the general panel." The court made no order discharging him from the regular panel, and there was nothing to show that the advice was acted upon, nor anything to show that he understood that he was not qualified to serve in another case, and his negative answer was correct. **Held**, that he concealed nothing affecting his qualifications, and appellants are not to be excused for failure to question him further on the ground that they forgot to ask him the necessary questions.

4. **JUDGE: Remarks: Improper Objection.** It is not improper for the court to remark that an objection to evidence is not a proper objection, where the objection states no reason why the evidence is incompetent.

5. ———: **Commending Jury: Bias.** The thanking of the jury by the court for their verdict, after the verdict is returned and they have been discharged, and complimenting them "on having the nerve to assess a punishment commensurate with the crime," does not show bias on the part of the judge. It is not improper for the judge during the progress of a trial to form an opinion of defendant's guilt.

6. **ARGUMENT TO JURY: Scurrilizing Argument for Defendant: Defective Record.** Where the record does not show what the attorney for the appellants had said to call forth from the prosecuting attorney a characterization of the argument of appellants' attorney as "a vile and malicious attack" upon the prosecuting witness, this court is unable to say that the prosecutor was not within his rights in his extravagant denunciation of it.

7. ———: **Rebuke: Unwarranted Inference.** The prosecuting attorney is not to be rebuked for drawing unwarranted inferences which he in good faith thinks justifiable, nor for an unsound argument.

8. ———: **Alibi: Failure to Testify.** An inquiry by the prosecuting attorney in his argument to the jury, "Where is the alibi for Jack Murray except for his wife?" cannot properly be interpreted as a direct reference to Murray's failure to testify, where his wife testified in support of his alibi; it was simply the calling of the attention of the jury to the fact that defendant had failed to produce evidence in support of his defense of alibi.

9. ———: **Prevalence of Crime: Effect of Punishment.** The prosecuting attorney in his argument to the jury may very properly comment upon the prevalence of crime in a community as a matter of common knowledge, and may urge the jury to do their duty and to fix a maximum punishment where he believes the evidence warrants it. In a case of robbery accompanied by an atrocious assault he is within his rights in telling the jury

that "you have a perfect right to take into consideration what effect the punishment you inflict will have upon others in deterring them from crime;" and the remark was not error though the verdict assessed the punishment at twenty-five years' imprisonment.

**10. CROSS-EXAMINATION: Improper Objection: Prejudicing Jury.** The very purpose of producing evidence by the State is to influence the jury in favor of the guilt of defendant. Where the prosecuting attorney asked the defendant on cross-examination, "What other names do you go by?" an objection that the question was asked "for the purpose of prejudicing this jury against the defendant" was properly overruled as an improper objection.

**11. ———: Alias of Defendant: Objection: Irrelevant and Immaterial.** An objection to a question, asked of defendant on cross-examination, inquiring what other names she goes by, that the evidence is irrelevant and immaterial, is properly overruled. It is both relevant and material to show that defendant has gone by another name; and such a question is one method of testing her accuracy and veracity.

**12. ———: Statute: No Objection.** The statute (Sec. 4036, R. S. 1919) provides that the defendant, as a witness, may be impeached and contradicted as any other witness may be, with certain exceptions; and where no objection or suggestion was made to questions asked on cross-examination of a defendant, that the matters were not inquired into in her examination in chief, it will not be held on appeal that the questions, otherwise proper, came within the restrictions of the statute.

**13. WIFE: Torts and Crimes: In Presence of Husband: Presumption of Coercion: Act of 1915.** The Act of 1915 (Sec. 4241, R. S. 1919), declaring that "for all civil injuries committed by a married woman, damages may be recovered against her alone, and her husband shall not be responsible therefor, except in cases where, under the law, he would be jointly responsible with her, if the marriage did not exist," makes the wife liable for torts committed by her in her husband's presence, and in civil cases removes the presumpton that she committed the tort under his direction and as a result of restraint and coercion; but the act carefully avoided any language which would affect her criminal liability, and, although the reason for the common-law rule has passed with the exemption from the control of their husbands exercised by married women under the present married women's acts and custom, the common-law rule in regard to her criminal liability is not relaxed in this criminal case.

**14. INSTRUCTION: Wife and Husband as Defendants: Presumption of Coercion: No Request.** Where a man and woman were jointly indicted and tried for robbery, and the evidence did not show that they were man and wife, but did show that she acted independently of him and directed the robbery, and no request was made that the instructions inform the jury that she was presumed to have committed the crime under her husband's direction, it was not error to fail to give such an instruction, or to give an instruction authorizing the jury to return a verdict against both without taking into consideration the question whether she was the wife of the other, or under his control.

**15. ———: ———: ———: Collateral Issue: All Law of Case.** The statute (Sec. 4025, R. S. 1919) does not require the court, of its own motion, to instruct upon matters purely collateral; it only requires the court, without request, to instruct upon all the essential elements of the offense embraced within the charge. Whether a woman, jointly indicted and tried with a man for robbery, was a married woman acting under compulsion of her husband or with freedom from his control, was not an essential element of the offense, but the presumption of compulsion, being a rule of evidence, is collateral to the main issue, and therefore the court was not required, without request, to give an instruction telling the jury that a wife, present

and participating in the commission of robbery, is presumed to have acted under his direction and compulsion, and therefore must be acquitted unless the State had produced evidence overcoming the presumption.

16. ———: ———: ———: **Enumerating Objections: Law of Case.** Objections by number to each of the instructions offered by the State that they are not the law of the case, do not properly declare the law of the case and are "involved, confusing, misleading, ambiguous and assume as true controverted facts," are not a request that the court, of its own motion, instruct the court upon the presumption in favor of a wife jointly indicted and tried with her husband, but the court had the right to assume that defendant had mentioned all the objections he had to the instructions.

Corpus Juris-Cyc. References: **Citizens,** 11 C. J., Section 5, p. 777, n. 56; p. 778, n. 57. **Criminal Law,** 16 C. J., Section 1034, p. 543, n. 40; Section 1054, p. 549, n. 75; Section 2093, p. 827, n. 14; Section 2198, p. 875, n. 19; Section 2199, p. 877, n. 28; Section 2235, p. 894, n. 33; Section 2240, p. 896, n. 85; Section 2242, p. 898, n. 98; Section 2249, p. 903, n. 59, 60; Section 2250, p. 904, n. 70; Section 2260, p. 910, n. 68; p. 911, n. 69, 70; Section 2266, p. 914, n. 12; Section 2497, p. 1056, n. 14; Section 2498, p. 1056, n. 20; Section 2500, p. 1058, n. 37; Section 2501, p. 1059, n. 42; 17 C. J., Section 3331, p. 59, n. 37; Section 3461, p. 169, n. 2; Section 3462, p. 169, n. 8; p. 170, n. 12; Section 3464, p. 173, n. 51; Section 3570, p. 224, n. 50 New. **Husband and Wife,** 30 C. J., Section 413, p. 784, n. 25; p. 785, n. 37; Section 419, p. 790, n. 14; Secttion 420, p. 791, n. 28; Section 420½, p. 792, n. 37, 47; p. 793, n. 65; p. 794, n. 67. **Robbery,** 34 Cyc., p. 1807, n. 69. **Witnesses,** 40 Cyc., p. 2474, n. 26; p. 2475, n. 28; p. 2481, n. 64; p. 2483, n. 65; p. 2488, n. 90; p. 2489, n. 1; p. 2497, n. 55; p. 2565, n. 5, 7; p. 2566, n. 13; p. 2572, n. 32.

Appeal from Jackson Circuit Court.—*Hon. Nelson E. Johnson,* Judge.

AFFIRMED.

*Piatt & Marks, Rader & Rader* and *Paul S. Conwell* for appellants.

(1) The court erred in permitting cross-examination of defendant Edna Murray on matters not gone into in her examination in chief. Sec. 4036, R. S. 1919; State v. Barker, 249 S. W. 78; State v. Conway, 145 S. W. 444; 1 Bishop's New Crim. Proc., sec. 1122; State v. Elder, 36 Wash. 482; 28 R. C. L. 446; State v. Barrington, 198 Mo. 71; State v. Lemon, 263 S. W. 186; State v. Mitchell, 229 Mo. 683; State v. McGraw, 74 Mo. 573; State v. Porter, 75 Mo. 171; State v. Shuster, 173 S. W. 1049; State v. Beckner, 194 Mo. 281; 26 R. C. L. 621, sec. 209; State v. Hyde, 136 S. W. 322; State v. Spivey, 191 Mo. 87; State v. Hillebrand, 255 S. W. 1009; Sec. 23, Art. II, Constitution of Missouri; State v. Tracey, 255 S. W. 1009; State v. Blackburn, 273 Mo. 482; State v. Wellman, 253 Mo. 302; State v. Sharp, 233 Mo. 269; State v. Edmundson, 218 S. W. 864; State v. Snow, 252 S. W. 629; Childress v. State, 86 Ala. 77; Martin v. State, 63 Miss. 505; People v. Montague, 71 Mich. 447; Latham v. United States, 226 Fed. 420. (2) The court erred in refusing to give Instruction "A" in the nature of a demurrer to the evidence on behalf of defendants at the close of the State's case in chief. State

v. Hartnett, 75 Mo. 251; State v. Meyer, 64 Mo. 190; State v. Hughes, 71 Mo. 633; State v. McGrath, 73 Mo. 181; State v. Inman, 76 Mo. 548; State v. Britton, 80 Mo. 60; State v. Young, 99 Mo. 284; State v. Tracey, 225 S. W. 1009; State v. Bush, 118 S. W. 672. (3) The court erred in refusing to sustain motion for new trial because of the incompetence of Robert Nelson, a juror at the trial. Secs. 4009, 6680, R. S. 1919; 35 C. J. 143, sec. 9; 147, sec. 12; State ex rel. v. Slover, 134 Mo. 607; Isaac v. State, 2 Head (Tenn.) 458; Coppersmith v. Railway Co., 51 Mo. App. 357; State v. Poor, 286 Mo. 644; Lamphier v. State, 70 Ind. 317; Romaine v. State, 7 Ind. 63; State v. Whiteside, 49 La. Ann. 352; Ellis v. Territory, 13 Okla. 633; Baren v. State, 23 Tex. App. 28; State v. Thompson, 24 Utah, 314; State v. Schneiders, 259 Mo. 319. (4) The court erred in giving instruction numbered 1 on behalf of the State. 30 C. J. 792, sec. 420½; Haffner v. State, 187 N. W. 173; State v. Keithley, 127 S. W. 406; State v. Miller, 162 Mo. 253; Sinder v. United States, 288 Fed. 695; Sec. 4025, R. S. 1919; State v. Cantrell, 290 Mo. 232; State v. Conway, 241 Mo. 271; State v. Burrell, 252 S. W. 711; State v. Swarens, 294 Mo. 139; State v. Collins, 237 S. W. 519.

*North T. Gentry,* Attorney-General, and *Claud Curtis,* Special Assistant Attorney-General, for respondent.

(1) The demurrer on behalf of Edna Murray was properly overruled. State v. Ma Foo, 110 Mo. 7, 19 L. R. A. 358. (2) Nelson is an American citizen and was competent to sit on the jury. United States v. Wong Kim Ark, 169 U. S. 649; Kohl v. Lehlback, 160 U. S. 293; Raub v. Carpenter, 187 U. S. 163. (3) Edna Murray, one of the defendants, testified on direct examination that she lived in St. Louis and was the wife of Jack Murray, co-defendant. On cross-examination, over the imperfect objection of the defendant, she was asked what other names than Edna Murray she had gone by and whether she had been married to "Diamond" Joe Sullivan and gone by the name of Edna Sullivan. This was not error. State v. Donnington, 246 Mo. 343; State v. Myers, 221 Mo. 598; State v. Lemon, 263 S. W. 186; State v. Stokes, 288 Mo. 554; State v. Glazebrook, 242 S. W. 931. (4) The argument of the prosecuting attorney did not constitute reversible error. State v. Baker, 262 Mo. 689; State v. Prunty, 276 Mo. 359; State v. White, 299 Mo. 599; State v. Sherman, 264 Mo. 384; State v. Hart, 237 S. W. 481; State v. McBride, 231 S. W. 594; State v. Williams, 274 S. W. 427. This court will not reverse a case for improper remarks made by a prosecutor before a jury unless it appears that the defendant has been prejudiced thereby. State v. Harvey, 214 Mo. 403; State v. Hibler, 149 Mo. 478; State v. Tracy, 294 Mo. 372; State v. Williams, 274 S. W. 427. (5) The remarks made by the trial court in the presence of the jury do not constitute reversible error since no objections were made by defend-

ants' attorney they are not before this court for review. State v. Findley, 101 Mo. 217; York v. United States, 241 Fed. 656; People v. Silva, 227 Pac. 976; 16 C. J. 836, sec. 2111. (6) The court submitted the issues in the case under proper instructions. (a) Instruction 1 was correct. State v. Strada, 274 S. W. 34; State v. Affronti, 292 Mo. 53; State v. Daugherty, 302 Mo. 638. (b) So was Instruction 2. State v. Williams, 274 S. W. 427.

WHITE, J.—In the Circuit Court of Jackson County, October 1, 1925, the defendants were found guilty of robbery in the first degree and the punishment of each assessed at twenty-five years in the state penitentiary. The court rendered judgment in accordance with the verdicts, and both defendants appealed.

On April 6, 1925, one H. H. Southward was employed by Lerner Grocer Company. A part of his duty was to take the money of the company to the bank for deposit. On that day, about nine o'clock, he started with $112.50 in cash, and $83 in checks, intending to go to the Commerce Trust Company at the corner of Tenth and Walnut streets. He drove to that point in his Ford car, and was able to find a parking place behind the bank in an alley. As he drove into the alley he saw two men standing at the corner. A car was standing there also, either a Dodge or a Buick. Just after he stepped out of his car one of the men hit him in the back with something which he took to be a gun. They then picked him up by the trousers and threw him in on the floor of the car which stood there. A young woman sitting in the front seat of the car told one of the men to get the key and follow in Southward's car. He took Southward's key and followed in Southward's car. They drove down the alley, blindfolded the witness and drove around for about two hours, the defendant, Edna Murray, driving and the defendant, Jack Murray, sitting beside the witness. They drove close to the Sunset Hill Farm, near Dodson. There they robbed the witness, taking the money and checks. They took off his shoes and threw them into the car. The woman threatened that if he didn't give her more money she would fix him where he would not have any. They then drove away. The witness went to the first house, telephoned the police station, got a pair of shoes and came back to town. He could not run his car because the robbers had his key.

The State also introduced a surveyor who, when taken to the spot where the witness said he was robbed, by his measurements found the place to be in Jackson County.

The defense was an alibi. Edna Murray testified that she was the wife of Jack Murray, and accounted for the whereabouts of herself and Jack at the time of the robbery. Two or three other witnesses testified corroborating her statements, that the defendants were at home or elsewhere than the place where the robbery took place.

Defendant filed a motion for rehearing, containing forty-one assignments of error, the motion covering twenty-three closely printed pages, the same point being sometimes presented in a half dozen different forms. Some of these assignments are lengthy arguments. The real points relied upon are condensed by appellant in his formal assignment of errors in this court.

I. Several of the assignments in the motion refer to the alleged incompetency of one Robert Nelson, a juror. No objection was made to him in the *voir dire* examination. The court's attention first was called to him in the motion for a new trial. It is **Juror:** claimed that he was incompetent to serve because he **Qualifications.** was not a citizen of the United States, also because he had been discharged on the day previous from the regular panel on that account, and concealed that fact from the court when he was qualified. On the motion the court took evidence. The defendant introduced the record of his examination the previous day as to his qualification to sit in another case. His father was an Englishman who came to New York and married there; his mother was an American by birth and he was born in New York. Though in his childhood he lived a few years in England, he was in fact an American citizen. [United States v. Wong Kim Ark, 169 U. S. 649.]

Further, the appellant is not in position to question his qualification; Section 6608 provides that "no exception to a juror on account of his citizenship, non-residence, state or age or *other legal disability* shall be allowed after the jury is sworn." Under that section we have held that if a party fails to question a juror as to his qualifications, when the juror is examined upon his *voir dire*, it is too late to raise objection afterward. [State v. Wilson, 230 Mo. 647; Hart Realty Co. v. Ryan, 288 Mo. l. c. 196.]

Further, the only question asked of Nelson on his *voir dire* examination in this case was whether he knew of any reason why he could not serve as a juror. He answered "No."

When he was examined as to his qualifications, on the previous day in another case, he explained at length his citizenship, etc., and on the challenge of the defendant the court said: "Mr. Nelson you will be excused. I think that under our statute you would not be competent to serve, and Mr. Sheriff, you advise Mr. Tobin up there to excuse him from the general panel."

All there is in this statement is that he was excused from service in that particular case. The court made no order discharging him from the regular panel. The judge addressed a remark to the sheriff telling him that Mr. Tobin, whoever that was, should be advised to discharge Nelson from the general panel. There is nothing to show that that advice was acted upon. In other words, the record does not show that Nelson was discharged from the regular panel. Nor is there

anything to show that he understood that he was not qualified to serve in another case. In fact, when he was asked if he knew of any reason why he should not serve as a juror in this case, and answered the question in the negative, he answered correctly. Therefore he did not conceal a matter affecting his qualifications. The party objecting is not to be excused for failure to contest the qualification of a juror on the ground that he simply forgot to ask the necessary questions. Nelson was not asked any question which would call for an explanation of the occurrences of the day before.

II. Appellant complains of improper remarks by the judge during the conduct of the trial. On one occasion the court overruled an objection to evidence made by the defendant's counsel saying that was not a proper objection. The court was entirely correct because the objection stated no reason why the evidence was incompetent.

**Remarks of Judge.**

The record does not show any other objection at any time to the remarks complained of here. *After* the jury had returned a verdict and was discharged the court thanked them, complimenting them on having the nerve to assess a punishment "commensurate with the crime." Objection is made now to that remark. The complaint is that it shows the bias of the judge. It seems to be argued that it is improper for a judge to form an opinion during the progress of the trial as to whether a defendant is guilty. Being human he cannot help forming an opinion, and as long as his demeanor during the conduct of the trial did not improperly influence the jury, no complaint can be considered.

III. A reversal is asked on account of alleged improper conduct and remarks of the State's counsel. On one occasion the defendant objected to "this man standing up to the platform and trying to bulldoze the witness." "This man," we presume, meant the prosecutor. The court overruled the objection, and by that determined that the prosecutor was not bulldozing the witness. It is said here that a rule of Jackson County required counsel in examining a witness to sit at the counsel table. No such rule was introduced in evidence, nor called to the attention of the court, and no objection was made at the time on that account.

**Argument to Jury.**

The prosecutor, Mr. Brewster, in the course of argument, said this: "Who is telling the truth? Either Izzie Rich lied when he went out and saw this witness. . . ." Objection to this was sustained on the ground that it did not comport with the evidence. The attorney then continued that there were five witnesses in contradiction of Isadore Rich and either the five, or Rich, lied. An objection to that was overruled. The attorney then said he was drawing his conclusion from the evidence and asserted his right to do so. Further on

in his argument the prosecuting attorney characterized the argument for the defense as a vile and malicious attack upon the prosecuting witness. The defendant objected and moved to discharge the jury on account of that remark. The record does not show what the attorney for the defense had said to call forth that characterization, and we are unable to say that the prosecutor was not within his rights in his extravagant denunciation of it.

The prosecutor continued as follows:

"Where is the alibi for Jack Murray  except for his wife?" Jack Murray himself did not testify, while his wife did testify in support of the alibi.

In closing his argument the prosecutor said:

"Gentlemen of the Jury, you are not here to reform these people, you are here to punish them, and you, in determining the punishment you would inflict, have a perfect right to take into consideration what effect the punishment you inflict will have upon others in deterring them from crime."

The prosecutor had a right to draw any inference from the evidence which he in good faith thought was justifiable. He was not to be rebuked for drawing unwarranted inferences, nor on account of an unsound argument. [State v. Reppley, 278 Mo. 1. c. 343.]

Appellant complains that the restriction of Section 4037, Revised Statutes 1919, was violated in referring to the alibi for Jack Murray; that it was a direct reference to Jack Murray's failure to testify. The remark cannot be so interpreted. The attorney simply asked: "Where is Jack Murray's alibi?" It is not error for the prosecuting attorney to call attention to the fact that the defendant had failed to produce evidence in support of some defense, such as an alibi. That is not a reference to the failure of the defendant to testify because such a defense may be proven by other witnesses. [State v. Prunty, 276 Mo. 1. c. 377; State v. English, 308 Mo. 704.]

A prosecuting attorney in his argument may very properly comment upon the prevalence of crime in a community as a matter of common knowledge, and may urge the jury to do their duty and to fix a maximum punishment where he believes the evidence would warrant it. [State v. McBride, 231 S. W. 1. c. 594, and cases cited.] The prosecutor in this case was entirely within his rights, so far as the record shows.

IV. The appellant complains of error when the court permitted the prosecutor to cross-examine the defend-
**Defendant as Witness:** ant Edna Murray on the ground that such
**Cross-Examination.** cross-examination was not about the matter referred to in her examination in chief, contrary to Section 4036.

After she stated her name Mr. Brewster asked her this question: "What other names do you go by?"

Defendant's counsel objected because the question was asked "for the purpose of prejudicing this jury with the defendant." And to other questions along that line he made the same objection. The court overruled the objection on the ground that it was not a proper objection. It was not a proper objection. The very purpose of producing evidence by the State is to influence the jury in favor of guilt. If the State were not allowed to bring out any fact or produce any evidence which would cause the jury to believe the defendant guilty it would have to abandon trials.

At another time in the progress of that examination the defendant objected because the evidence was irrelevant and immaterial. The evidence was not open to that objection. It was relevant and material to show that the defendant Edna Murray had gone by another name. In cross-examination a witness may be asked any question which would test his accuracy or his veracity. It is not improper to go into a witness' history in order to do that. [State v. Davis, 225 S. W. l. c. 709, and cases cited.]

Section 4036 provides that the defendant, as a witness, may be impeached and contradicted as any other witness in the case. That means that a defendant may be cross-examined as any other witness in the case, except as to the restriction mentioned. *No objection appears in the record and no suggestion that these matters were not inquired into in chief,* and for that reason we cannot say the trial court ruled erroneously so far as Section 4036 affected the matter.

IV. Finally the appellant claims error in giving instruction numbered one, which authorized a verdict without taking into consideration that Edna Murray was the wife of **Wife: Torts and Crimes:** Jack Murray. The argument is that if a **Act of 1915: Liability.** wife commits a crime in the presence of her husband she is presumed to have committed it under his direction and she could not be guilty in such case.

The defendant did not ask an instruction stating the presumption and requiring the jury to find that she acted independently and of her own volition, before they could find her guilty, but complains that the court under Section 4025 was bound to instruct on all the law of the case whether requested or not, and therefore should have instructed upon that point.

The common-law rule is as appellant states it: Marriage does not take from the wife her general capacity to commit crime, but it casts upon her the duty of obedience to her husband, and in the absence of proof to the contrary the law indulges a presumption that when a crime is committed by her in his presence it is the result of restraint or coercion. [State v. Miller, 162 Mo. l. c. 259.]

In some states that rule has been abrogated by express statute. In others it is held that the Married Woman's Emancipation Act, similar to that in Missouri, in giving the wife control of her own property free from the control of her husband, abrogates the common-law rule mentioned. [King v. City of Owensboro, 187 Ky. 21; Morton et ux. v. State, 141 Tenn. 357; State v. Hendricks, 32 Kan. 559.] The Kansas case, however, was a murder case. Murder, treason, and other crimes under certain circumstances, are excluded from the application of the rule.

The rule has been recognized in this State and followed, after the enactment of our Married Woman's Act. [State v. Miller, 162 Mo. 253, decided in 1901; State v. Halbrook, 279 S. W. l. c. 400.] This is in accord with the common-law rule that the husband is liable for the wife's torts, and that she is not responsible for torts committed in his presence. [Dailey v. Houston, 58 Mo. l. c. 366; Flesh v. Lindsay, 115 Mo. l. c. 14-15; Smith v. Schoene, 67 Mo. App. 606; Moore v. Doerr, 199 Mo. App. l. c. 430.]

We are unable to find any case in this State where the rule has been questioned as to the non-liability of the wife, either civilly or criminally, if the offense is committed in the presence of her husband, in the absence of a showing that she acted upon her own initiative. The Legislature in 1915 passed an act which contains what is now Section 4241, Revised Statutes 1919, providing "for all civil injuries committed by a married woman, damages may be recovered against her alone, and her husband shall not be responsible therefor, except in cases where, under the law, he would be jointly responsible with her, if the marriage did not exist." The effect of that statute is two-fold. It relieves a husband from liability for his wife's torts, whether committed in or out of his presence, and it makes her liable for torts committed by her in his presence. She is presumed to be liable, instead of the contrary, and to avoid liability she would have to show that she was not a free agent, but under coercion. So far as her torts are concerned it puts her exactly on a level with any other person. At the time that act was passed the common-law rule in relation to her non-liability for crimes committed in the presence of her husband had been recognized by this court as still in force. The law-makers in 1915 were presumed to know that that rule prevailed and to have had it in mind when they undertook to change the law in relation to the liability of the married woman for torts. They carefully avoided any language which would affect her criminal liability in such cases. The reason for the common-law rule has passed with the exemption from control exercised by married women under present laws and customs. But the Legislature has declined to relax the rule in regard to her criminal liability, and we find it unnecessary, judi-

cially, to do so for the purposes of this case, as will appear in the next paragraph.

V.   From the evidence of Mr. Southward the jury could very well find that defendant was acting independently of her husband's control.   She drove the car after Southward was put into it.   She directed the other man to take the key and drive Southward's car and follow.   She threatened the defendant and told him if he didn't give her more money she would fix him where he would not have any. Throughout the entire episode of his abduction and robbery she seemed to be the guiding spirit and her husband apparently obeyed her orders.   Furthermore, while she testified that she had been married to Jack Murray in Los Angeles, the jury were not obliged to believe that.   There was nothing in the occurrence at the time of the robbery, and nothing appearing in the State's evidence as the case was made out, to show that she was married to Jack Murray, or that Edna Murray was her real name.   A demurrer was offered to the evidence at the close of the State's evidence and again at the close of all the evidence.   These demurrers put the two defendants together.   There was no separate demurrer for Edna Murray; no suggestion throughout the trial that she was not guilty on account of being the wife of Jack Murray.   No evidence was offered by the defendant to show that she was acting under his direction.   No instruction was offered by the defendant requiring the jury to find that she was acting independently of her husband's control in order to find her guilty.   We may, therefore, assume that in arguing those demurrers to the evidence the defendant did not mention the point. Before the case was given to the jury the court was never given an opportunity to submit the question, whether she was a free agent or acting under the compulsion of her husband.   The leading case cited by appellant (State v. Miller, 162 Mo. 253) was reversed and the cause remanded because the defendant asked and the trial court refused an instruction covering that point.

The trial court is required by Section 4025 to instruct on all the law of the case whether requested or not, but it is not required to instruct on matters purely collateral.   What is meant by a matter collateral to the main issue is explained in a leading case construing Section 4025.   [State v. Lackey, 230 Mo. l. c. 720.]   A court must, without request, require the jury to find "all the essential elements of the offense embraced within the charge."   [See State v. Starr, 244 Mo. l. c. 180-181; State v. English, 274 S. W. l. c. 474, and cases cited.]   Here, the court's instruction required the jury to find every element of the crime of robbery committed by defendant before they could find her guilty.   [State v. Garrett, 285 Mo. 286.]   Whether defendant Edna Murray was a married woman acting under com-

pulsion of her husband or with freedom from his control was not an essential element of the offense. The presumption of compulsion in such case is a rule of evidence. It places upon the State the burden of proof to show that the wife acted freely and of her own volition. Absent the presumption, the burden would be upon her to prove coercion. Therefore, being a rule of evidence it is collateral to the main issue, the essential facts constituting the crime.

When the instructions were offered by the State the defendant objected to each of them by number, on the ground that such instructions were not the law of the case, and did not properly declare the law of the case. That said instructions are ''involved, confusing, misleading, ambiguous and assume as true controverted facts.'' The instructions were perfectly good as against those objections. They did properly declare the law of the case. They were correct as far as they went. The trial court had a right to presume that the defendant mentioned all the objections which he desired to urge to the instruction.

The judgment accordingly is affirmed. *Walker, P. J.,* concurs; *Blair, J.,* concurs in result and all except what is said as to wife's non-liability for crimes committed in presence of husband.