THE STATE v. ALMA PATTON, Appellant.—147 S. W. (2d) 467.

Division Two, February 1, 1941.

304

*Frank S. Sea, Don W. Owensby, Lee Crook* and *Charles Farrar* for appellant.

*Roy McKittrick,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant, Alma Patton, was convicted of forging a check and sentenced to two years' imprisonment in the penitentiary, from which sentence she appealed. The information was filed in the Circuit Court of Polk County. On application of the defendant the venue was changed to St. Clair County where the cause was tried. The check in question read as follows:

"Bolivar, Mo. Aug. 29, 1938. No. ————
POLK COUNTY BANK, 80-3427
Pay to Author Tidwell, or order $2000
Two Hundred Dollars —/100 Dollars
J. L. Kaudle."

J. L. Kaudle was a farmer in Polk County, owning three farms and some live stock. He disappeared on or about July 25, 1938, and was not seen or heard of from that date to the time of the trial. Appellant and her husband, Clay Patton, lived on one of Kaudle's farms and Kaudle stayed with them. Arthur Tidwell held a note, signed by Kaudle, on which a balance of $200 was due, the note being secured by a chattel mortgage on two mares and a team of mules. On September 3, 1938, Tidwell received a letter and the check here in question. The envelope in which the check and letter were mailed was postmarked Denver, Colorado. The letter contained instructions to Tidwell to take the notes held by Tidwell to Clay Patton who would pay the interest due thereon. The letter also contained the statement that he, Kaudle, has turned his part of the stock over to Patton. Tidwell cashed the check. On April 16, 1938, Clay Patton gave a note for $600, payable to J. L. Kaudle, secured by a chattel mortgage on a one-half interest in certain live stock located on the Kaudle farm. Appellant and her husband and a man whom they introduced as Kaudle to the bank cashier at Buffalo where the papers were prepared, were present when the note and mortgage were signed. This note, at the time of the trial, had been credited with payments totaling the sum of $472. The notations on the note with reference to these alleged credits were all made by appellant. The record justifies the inference that the man appellant and her husband introduced as Kaudle was in fact not Kaudle. After Kaudle disappeared Patton sued the administrator of the assets of Kaudle for a one-half interest

in the live stock, but the court found against Patton. After the disappearance of Kaudle and after the letter had been received by Tidwell, an investigation led to the arrest of appellant and her husband. They were charged with forgery of the check received by Tidwell. The evidence leaves the inference that the signature to the check, "J. L. Kaudle," may have been genuine. Evidence, however, showed beyond doubt that the date of the check, the amount stated in the check and the name of the payee had been changed. The letter to Tidwell, which accompanied the check, was written by appellant. This she admitted. And she also admitted that she wrote the check with the exception of the signature. Appellant's husband testified that after the letter was written he made a trip to Denver, Colorado, for the purpose of mailing the letter at that point. Appellant testified that she knew her husband made that trip.

Only two points were briefed for a reversal of the judgment. First, appellant contends the evidence showed the alleged forged check was written by appellant in the presence of and under the direction of her husband, and therefore the law presumed that she committed the act under coercion of her husband, and that the evidence was insufficient to repel that presumption, citing State v. Miller, 162 Mo. 253, 62 S. W. 692, and other cases. The second point briefed pertained to instruction number five. It is claimed that the instruction was erroneous because it took from the defendant the protection of the presumption of coercion.

We are of the opinion the evidence fully justified a finding that appellant was a party to the scheme to defraud and did not commit the forgery under coercion. She was present at the bank when the mortgage and note were executed giving as security a one-half interest in the live stock later claimed by Patton. This note and mortgage were evidently made solely for the purpose of aiding in the scheme to obtain the property of Kaudle. Appellant wrote the letter informing Tidwell that Kaudle had turned the stock over to Patton. She knew Kaudle was not in Denver. A brother of Kaudle became alarmed about his disappearance and made inquiry of appellant as to his whereabouts. The record discloses she deliberately gave him information which she knew was not true. She informed him that she had heard from Kaudle at a point in Colorado. This was a false statement. She also made statements to officers inconsistent with her testimony at the trial. She contradicted herself while testifying in the trial of this case. Her evidence and her conduct clearly showed that she and her husband knew Kaudle was not in Denver. Appellant testified on direct examination that she wrote the check and the letter and addressed the envelope at her husband's request. On cross-examination she testified as follows:

"Q. Why did you write the check? A. Well, to pay his debt, as he had us to.

"Q. To pay his debt; now, did you know that he had any money in the Polk County Bank? A. I don't know as I did, but he had us to write for him. . . .

"Q. Who had you to write for him? A. John Kaudle.

"Q. Well, I thought you just said that that check was blank? A. Well, Walter Fisher brought it over there, blank, to us.

"Q. Yes—how did you happen to have written in there 'Author Tidwell' and 'Two Hundred Dollars'? How did you happen to be writing that in there? A. I just got through telling you.

"Q. Because John Kaudle told you to? A. He told Fisher, and we wrote it.

"Q. I beg your pardon? A. I say he told Fisher, and we written it.

"Q. Were you there when he told Fisher and you to write it? A. Well, I had been doing his writing for him.

"Q. He wasn't there on August 29th, was he? A. No, I didn't see him.

"Q. You hadn't seen him for more than a month before that, had you? A. Well, something like that.

"Q. And yet you tell the jury that Mr. Kaudle told you to write this in there? A. I say that he told Fisher, and Fisher told us."

The man referred to as Fisher testified he had never heard of the check or letter until rumors with reference thereto began to circulate in the neighborhood. An officer testified that appellant stated to him she wrote the check at Fisher's request while her husband was away at work. Numerous witnesses testified that appellant's reputation for truth was bad.

We conclude the evidence fully justified the finding of the jury that appellant was an active participant in the fraudulent scheme and forged the check in pursuance thereof and not under coercion. A jury would have been gullible indeed had it believed her story. The point is ruled against appellant.

The instruction upon the question of the liability of a wife for crime committed in the presence of her husband followed the established law. [State v. Miller, 162 Mo. 253, 62 S. W. 692; State v. Murray, 316 Mo. 31, 292 S. W. 434, 439 (20, 21) (24, 25).] The court instructed the jury that if appellant committed the forgery in the presence of her husband then the law presumed "that she acted under his influence and duress, and you will find defendant not guilty." In another instruction of which appellant complained the jury was informed that if appellant wrote the check without any coercion on the part of her husband, or acted jointly with her husband and without coercion, or if she wrote the check at the request of Walter Fisher, then defendant was guilty, provided the jury found her guilty as outlined in Instruction No. 1. In State v. MaFoo, 110

Mo. 7, reported as State v. Baker in 19 S. W. 222, 1. c. 224, 225, this court said:

■ "From a close examination and comparison of the cases and the text-writers, the general rule admitted.by all seems to be that, if a wife commits any felony, with the exception of murder and treason, and perhaps some other heinous felonies, in the presence of her husband, it is presumed, in the absence of evidence to the contrary, that she did it under constraint by him, and is therefore excused. [Com. v. Neal, 1 Benn. & H. Lead. Crim. Cas. 81; Com. v. Neal, 10 Mass. 152; 1 Bish. Crim. Law, 452; State v. Williams, 65 N. C. 398.] But the authorities are equally agreed that this presumption is only prima facie and rebuttable. So it is said in Russell on Crimes (pages 32, 33:) 'But this is only the presumption of law, so that if upon the evidence it clearly appear that the wife was not drawn to the offense by her husband, but that she was the principal inciter of it, she is guilty.' 'And if she commit a theft of her own voluntary act, or by the bare command of her husband, or be guilty of murder, treason, or robbery in company with or by coercion of her husband, she is punishable as if she were sole.' And this is the doctrine of all the states in the United States. [1 Whart. Crim. Law, sec. 79; Seiler v. People, 77 N. Y. 411; Tabler v. State, 34 Ohio St. 127; Uhl's Case, 6 Grat. 706; State v. Williams, 65 N. C. 398; Miller v. State, 25 Wis. 384.]"

We have examined the record and find it free from error. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.