251 S.W.2d 680 (1952)
STATE
v.
READY.
No. 43008.
Supreme Court of Missouri, Division No. 1.
October 13, 1952.
*681 J. Ben Searcy, Eminence, for appellant.
J. E. Taylor, Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., for respondent.
LOZIER, Commissioner.
Defendant was convicted of exhibiting a dangerous and deadly weapon in a rude, angry and threatening manner and fined $100. As the offense is a felony, defendant's appeal is properly here. Sections 556.020, 564.610 RSMo 1949, V.A. M.S.; State v. Plassard, 355 Mo. 90, 195 S.W.2d 495, 496.
Defendant filed no brief. We therefore examine the record proper and the bill of exceptions and consider the assignments made in defendant's new trial motion. State v. Politte, Mo.Sup., 249 S.W.2d 366, 367. Those assignments of error were: (1) Refusal to direct an acquittal on the ground that the state failed to make a submissible case; (2) admission of certain evidence; (3) permitting the state, on the day of trial, to endorse the names of two witnesses on the information; and (4) not instructing the sheriff, when summoning extra jurors to complete the panel, "to select some women so that defendant might have a chance to be tried by a mixed jury or a jury of her own sex."
The state's evidence was: Defendant and her husband, James J. Ready, lived on a farm. J. Karl Turner's farm adjoined the Ready place. H. L. Weuthrick had contracted to buy the Turner place. On March 28, 1951, Turner and Weuthrick had driven posts for a fence between the Turner and Ready places. Later, in their absence, someone pulled up the posts. Turner and Weuthrick were replacing the posts. The Readys appeared. Defendant was pointing a .22 caliber rifle at Turner. She said nothing at that time. Turner asked Ready "to take the gun off me." Ready *682 said, "she is only doing what I tell her to do." Turner "walked up the fence to the corner * * * and she came along and still held the gun on me." Turner again said, "take that gun off me," and Ready again said, "she is only doing what I am telling her to do." Twice she said, "`Step back out of line.' * * * The third time she said, `Red [Weuthrick], get out of line, I want to take a crack at him.'" Defendant was always about 15 or 20 feet away from Turner. Weuthrick's testimony corroborated Turner. According to Weuthrick, defendant "never took the gun down; * * * her hands were blue from holding it so tight." Weuthrick's wife and daughter observed the incident from a distance. Both testified that defendant "was holding a gun on Turner," but neither heard the conversation.
Defendant's evidence was: The posts had been put 12 or 14 feet inside the Ready land; the Readys were "out looking for a possum"; Turner called to them; Ready handed the rifle to defendant; Turner said, "Jim, make her put that gun down" and Ready said, "she is doing just what I told her to do." According to Ready, defendant had the rifle "pointed down in her left arm. * * * I had given it to her before I went to the fence, all I needed was my hands. * * * I never told her to hold it on Karl. * * * She never pointed it at anybody; * * * she is lefthanded." Defendant testified that when Turner called Ready, Ready said, "`Mother, hold this for me,' and he went to see what he wanted and handed the gun over to me and I had it toward the ground and he went to the fence line to talk to Mr. Turner. * * * I never fired a gun in my life. * * * I never pointed the gun at him (Turner) at any time."
Weuthrick also testified that he had rented the Ready place for two years; that, "two or three months before" the incident, defendant "said she would kill him (Turner) sometime or other." Weuthrick's wife also testified that, some 6 or 7 months before the incident, she heard defendant say several times that she was going to kill Turner. Certain testimony of witnesses Day and Lee is hereinafter mentioned. One of defendant's character witnesses testified, on direct examination, that she "had heard about the trouble she (defendant) had with Karl Turner for years."
In support of her first assignment (nonsubmissibility), defendant argued thus: The state's evidence established that she "was never out of her husband's presence, and that whatever she did was done at his instance and at his special request and command; that such evidence failed to show that she was in any sense the independent inciter and mover of the crime; and that if a crime was committed, the evidence shows that it was done in the presence of, at the request of and at the command of her husband."
"In determining the sufficiency of evidence, we consider as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom. Evidence to the contrary is rejected." State v. Harmon, Mo.Sup., 243 S.W. 2d 326, 331.
In Instruction A, given at defendant's request, the jury was instructed that, if they found that defendant exhibited the rifle in a rude, angry and threatening manner in the presence of Turner and the Weuthricks while her husband was present, "then the law, in the absence of other and further culpatory and explanatory evidence against the defendant herself, presumes that she acted under the immediate coercion of her husband, and [if] you find she acted in such case, you will find the defendant not guilty." This is the Missouri rule. State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774, 779, and cases cited therein. (We need not determine whether the rule is archaic, as the attorney general now suggests, or whether, in these tempora et mores, we should judicially "relax the rule * * * for the purposes of this case". See State v. Murray, 316 Mo. 31, 292 S.W. 434, 439.
However, the presumption really a rule of evidenceis prima facie only and is rebuttable by evidence that the married woman acted independently of her husband's control. State v. Murray, 316 *683 Mo. 31, 292 S.W. 434, 439; State v. Ma Foo, 110 Mo. 7, 19 S.W. 222, 224, 33 Am.St. Rep. 414; State v. Patton, 347 Mo. 303, 147 S.W.2d 467, 469. "The question whether or not coercion existed is one of fact for the jury where there is a reasonable doubt as to the existence of coercion, and one of law for the court where only one reasonable inference can be drawn from the facts." 41 C.J.S., Husband and Wife, § 222, pages 715-716.
In the instant case, there was evidence from which the jury could reasonably have found that, despite her husband's statement ("she is only doing what I tell her to do"), defendant was not acting wholly at his instance and request. There was the evidence as to her previous disagreement with, and her threats against, Turner. There was the evidence as to defendant's statement, "Red, get out of line, I want to take a crack at him." We believe that this evidence was sufficient to make the coercion issue one for the jury.
The record does not sustain defendant's assignment that: The court erred in admitting the testimony of witnesses Day and Lee as to prior threats in that such testimony "was without foundation, vague and too remote; that said witnesses failed to set any reasonable time as to the making of said threats * * *." Generally, remoteness as to time affects only the weight, not the admissibility, of prior threats. State v. Clymer, Mo.Sup., 159 S.W.2d 808, 812. Furthermore, here defendant's objection to the state's question to Day as to "having heard any threats at any time" was sustained. Thereafter, Day testified as to threats made about the middle of February, 1951, some five or six weeks before the date of the offense. Lee did not testify that defendant made any threats against Turner. Lee's testimony was that in July, 1950, defendant brought to him a shotgun to clean and asked him to teach her how to shoot it. Lee then volunteered that later he told Turner's daughter that "she (defendant) was having it cleaned up to shoot her (Turner's daughter's) father." Defendant's counsel neither objected nor asked that the remark be stricken. Indeed, he developed the matter by crossexamination of the witness. See State v. Politte, Mo.Sup., 249 S.W.2d 366, 368. "But if appellant thought the answer was objectionable he should have moved to strike the answer out, stating the reason why the answer was inadmissible." State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 757.
Defendant next contended that, on the day of trial, she and her counsel consented to the endorsement upon the information of the names of witnesses Day and Lee, and did not ask a continuance because these two witnesses had misled her and her counsel as to the matters concerning which they would testify. However, when Day and Lee testified, defendant neither claimed surprise nor assigned surprise as a basis of objection to or for striking out any of the testimony of either witness or for a mistrial. "Issues of the nature under consideration are not timely presented when first raised in a motion for new trial." State v. Pittman, Mo.Sup., 221 S.W.2d 163, 164.
By the same token, we cannot consider defendant's assignment that: "The entire panel of twenty-four jurors were male citizens, that no woman was summoned as a juror and that defendant did not have a chance to be tried by a mixed jury or a jury of her own sex." The bill of exceptions does not disclose that defendant made any objection to the jury panel or its membership at any time prior to the time she filed her new trial motion. Such objection came too late to preserve the question for review. State v. Nichols, Mo.Sup., 165 S.W.2d 674, 675.
We have examined the entire record and find no reversible error. Accordingly, the judgment is affirmed.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER C., is adopted as the opinion of the court.
All concur.