STATE of Missouri, Respondent,

v.

William DONNELL, Appellant.

No. 50685.

Supreme Court of Missouri,

Division No. 2.

Feb. 8, 1965.

Motion for Rehearing or for Transfer to
Court En Banc Denied March 8, 1965.

Thomas F. Eagleton, Atty. Gen., Donald L. Randolph, Asst. Atty. Gen., Jefferson City, for respondent.

Bruce Nangle, St. Louis, for appellant.

EAGER, Judge.

The present appeal is one from an order denying a motion to vacate a judgment of conviction for first degree robbery, and a sentence of 99 years under the Second Offender Act. Section 556.280, RSMo 1959, Laws 1959, S.B. No. 117, V.A.M.S. The opinion affirming that judgment upon defendant's appeal appears at 351 S.W.2d 775. The present motion was denied on February 28, 1964, without the hearing of evidence. This may be done under Criminal Rule 27.26, V.A.M.R. if the motion and the files and records in the case show that the defendant is entitled to no relief. A motion for a rehearing, with an "addendum" and a supplemental motion filed later, were also denied; the appeal is here by virtue of a special order from this Court. It is prosecuted in forma pauperis and a brief has been filed here by appointed counsel.

In this pro se motion to vacate defendant recites many irrelevant facets of his prior difficulties and proceedings upon which we shall not elaborate. These include incarcerations and paroles in Illinois, a trial and acquittal on another charge in St. Louis, and federal habeas corpus proceedings. On January 26, 1960, defendant was indicted in the City of St. Louis for a robbery committed on May 22, 1959; he was confined in Illinois at the time of the indictment, but he alleges that upon his release on parole in February 1960, he signed a waiver for return to Missouri on the robbery charges. He further states: that after his return to St. Louis he was detained for more than twenty hours without counsel, frequently interrogated, and that he was arraigned without counsel; that he was later tried and convicted in April 1960, but that he was granted a new trial (at which the present conviction resulted, on

or about August 8, 1960). Since defendant is represented here by appointed counsel, we shall consider especially the Points and Authorities raised in the brief. Rule 28.02.

The first point in defendant's brief is as follows: "Defendant was denied an opportunity to prove that the actions of the Police Department and the State were not consistent with his Constitutional rights during the entire time he was extradited to Illinois in October 1959 or when he was returned from Illinois in January 1960. Further, that he was denied assistance of counsel during every step of said proceedings." We see no point in considering any alleged infringement of defendant's rights occurring before he was returned to Missouri on the present robbery indictment. It is the conviction on that charge which he is now attacking. We shall not consider here the Illinois proceedings or the alleged lack of counsel upon extradition; defendant was delivered to Missouri authorities for return to this state, and we do not look, collaterally, at those proceedings. We have no jurisdiction over the Illinois authorities and, moreover, defendant's mere return to Missouri was not a conviction; we look at the validity of the proceedings after he was returned.

Defendant states: that he was held from March 2 to March 9 by the St. Louis Police and placed in a lineup and interrogated on each day; he does not claim that he made any confession, oral or written, nor is any shown to have been used at his trial (see 351 S.W.2d 775); that on March 7 he was taken before Judge Nangle, who inquired if he had counsel; that he did not, but his case was set "for March 28 or 30, 1960"; that he wrote Judge Nangle a letter but received no reply; that on March 28 or 30, he was again summoned to Court and asked how he pleaded to which he replied that "I Plead The Right To Appear Before The Grand Jury." We have obtained on the Court's own motion certified copies of the minutes of the proceedings prior to the last and final trial. These show the

following: "Monday, March 7, 1960—Arraignment continued to 3/16/60. Wednesday, March 16, 1960—Sidney Ruben appointed by Court as Attorney for Defendant. Pleads Not Guilty; Trial Set March 28, 1960. Monday, March 21, 1960—Erving Cooper appointed by Court as Attorney for Defendant. Sidney Ruben withdraws as attorney for defendant. Erving Cooper withdrawn as attorney for defendant. Jerome Kalishman appointed by Court as attorney for defendant. Wednesday, March 30, 1960—Continued to next term of Court for want of time to try—April 4, 1960. Monday, April 4, 1960—Continued for State—April 11, 1960." Thereafter the cause was tried on April 11 and 12, 1960, a conviction was had, and a new trial granted on May 16, 1960. On that day new counsel was appointed for him, being more than fifty days before his second and final trial. It is thus obvious that defendant was not arraigned without counsel, nor was he without counsel at any time thereafter. The record does not show, nor does defendant state, why two attorneys found it necessary to withdraw before trial.

In State v. Statler, Mo., 383 S.W.2d 534, at 536–537, we said: "The sole question in this matter is whether defendant has stated (by affidavit or otherwise) any *facts* which raise a bona fide issue as to the constitutional validity of his trial. If 'the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief,' the Court may deny the motion without an evidentiary hearing. Rule 27.-26. The deluge of such motions now being filed, many of which are wholly without merit, attests to the wisdom of the quoted provision."

The first point in defendant's brief is that he was denied the opportunity to prove that his constitutional rights were violated by the Police and the State during the time when he "was extradited to Illinois in October 1959 or when he was returned from Illinois in January 1960,"

and that he was denied assistance of counsel "during every step of such proceedings." Our consideration begins with his return to Missouri after the present indictment. We have held that a mere detention without warrant beyond the twenty-hour period of our Rule 21.14 does not, per se, invalidate a confession nor constitute a ground for collateral attack. State v. Williams, Mo., 369 S.W.2d 408; State v. King, Mo., 380 S.W.2d 370; State v. Bryant, Mo., 375 S.W.2d 122. We likewise hold that a mere detention without warrant beyond twenty hours, where no confession is claimed, does not, per se, invalidate defendant's subsequent trial and conviction. But we look further at the present facts. The purpose of our Rule 21.14, "Arrest Without Warrant—20 Hour Limit—Bail," is to prevent excessive detention without a charge being made; when one has been indicted, he is thereby placed under the most formal of charges and, pursuant to Rule 24.19, a warrant is issued. A detention for more than twenty hours here could not conceivably be illegal. This defendant could only be released on bail.

No facts are alleged here which would indicate that defendant's detention up to March 16, 1960, without counsel, caused his final trial (or either of them) to be constitutionally unfair. In Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed. 2d 1265, a confession was obtained during lengthy and perhaps misleading interrogations conducted despite repeated requests of the defendant that he be permitted to consult his counsel, already employed. In Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the situation was much the same; there the defendant had on two or three occasions been denied the right to consult with his attorney, already employed, during the period when a confession was being obtained from him under lengthy (and supposedly misleading) questioning, and without advice concerning his right to remain silent. In that case there were vigorous dissents concurred in by four Justices. Douglas v. People of

State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, also cited, concerned the right to counsel on appeal. It will be mentioned later. In Crooker v. State of California. 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448, it was held that mere interrogations without counsel while in custody, resulting in a confession, did not constitute a violation of defendant's constitutional rights or render the confession involuntary, even though counsel was requested. The Court further held that a deprivation of counsel in pretrial proceedings did violate due process if the defendant was prejudiced to such extent that his subsequent trial could not be fundamentally fair. There were also dissents in that case. There the Court said in part: "Petitioner, however, contends that a different rule should determine whether there has been a violation of right to counsel. He would have every state denial of a request to contact counsel be an infringement of the constitutional right *without regard to the circumstances of the case.* In the absence of any confession, plea or waiver—or other event prejudicial to the accused—such a doctrine would create a complete anomaly, since nothing would remain that could be corrected on new trial. Refusal by state authorities of the request to contact counsel necessarily would then be an absolute bar to conviction. On the other hand, where an event has occurred while the accused was without his counsel which fairly promises to adversely affect his chances, the doctrine suggested by petitioner would have a lesser but still devastating effect on enforcement of criminal law, for it would effectively preclude police questioning— *fair as well as unfair*—until the accused was afforded opportunity to call his attorney. Due process, a concept 'less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights,' Betts v. Brady, 1942, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595, demands no such rule."

We thus determine that upon this defendant's allegations his detention, with-

out counsel, for the period of time from his return to Missouri to the time of his arraignment did not constitute a deprivation of any of his constitutional rights. Inherent in this ruling is the consideration that no confession and no admissions are claimed to have been procured and that no other circumstances are shown which were or became prejudicial. The mere fact that he was first positively identified by a witness or witnesses during that period is of no legal consequence. It is not the purpose of such proceedings as these to revalue the evidence produced at defendant's trial or to readjudicate his guilt. State v. Worley, Mo., 383 S.W.2d 529, 533, and cases there cited.

■ Another contention of defendant is that he was without counsel at his arraignment. The cases of Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114, White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (already discussed) are cited. These cases are clearly distinguishable, when considered in the light of the Missouri practice, State v. Gagallaritti, Mo., 377 S.W. 2d 298, but the complete answer to this contention is that counsel was appointed for defendant at the time of his arraignment, as already demonstrated, and a plea of not guilty was entered. We have seen fit to ascertain the facts by means of a certificate supplementing both the present record and the record in the original criminal case No. 48601 (351 S.W.2d 775), which latter record we have also read and considered here.

■ It is next asserted that defendant was denied a judicial determination of the contention "that he was convicted by perjured testimony." We are referred to the opinion affirming this defendant's conviction, 351 S.W.2d 775, and to State v. Eaton, Mo., 280 S.W.2d 63. In a very recent case, State v. Worley, Mo., 383 S.W.2d 529, at loc. cit. 531, we said: "As stated in the case of State v. Statler, Mo., 383 S.W.2d 534, opinion filed October 12, 1964, we recognize that a judgment obtained by the knowing

use of perjured testimony should be vacated upon a proper factual showing, but not upon the statement of mere conclusions. The applicable authorities were cited in that opinion. There would be no point in discussing the cases which defendant now cites, supposedly in support of that rule. The rule also applies where the State, knowing *at the trial* that material false testimony has come in, fails to correct it. Statler, supra." We are thus required to analyze, as best we can, the defendant's motion on this point; there must be essential factual allegations, as distinguished from conclusions or speculation. We first revert to the record of the trial of defendant. One Harry Bass was the storekeeper who had been robbed; he knew defendant to the extent that he had seen him on one prior occasion; he saw him in his store on three different occasions on the day in question, and he positively identified him as the robber, both when seen in the "show-up" at the police station and at the trial. He had also identified the robber from a photograph shown to him with a group of other photographs by Detective James F. Reddick. He specifically described defendant's clothing, the fact that he had a peculiar gait, and that he was stoop-shouldered. Officer Reddick testified: that he did not make the original robbery report but got into the investigation a "couple of months" later; that he talked to Mr. Bass three times, and on each of the last two occasions took a group of photographs to him; that on the second such occasion Bass identified one as a picture of the robber; that this was a photograph of the defendant; that he took defendant into custody in Illinois on March 2, 1960, for return to St. Louis; that Bass positively identified defendant in the "line-up"; that in talking with Bass he also talked to one Norman Benson who was in the store at the time of the robbery and that he showed Benson "the photographs." When we strip defendant's allegations of supposed "perjury" from his long and rambling statements of prior conversations and circumstances, as best we can, he merely states:

(1) that Reddick's testimony that Mr. Bass identified a picture from the second group was "deliberate perjury"; and (2) that Reddick's testimony that "he had not talked with any other persons than Mr. Bass and Mr. Benson" was perjurious, and that a supposed police report stated that Reddick and another detective had "received confidential information * * * that the negro wanted for the above hold up is William Donnell * * *." As to (1), the totally unsubstantiated statement that Reddick thus committed perjury is, under all the circumstances, nothing but a conclusion. Bass himself testified positively that he did so and that the picture was of this defendant, and he again identified a reproduction of the photograph at the trial. When we note here that Bass also positively identified the person of defendant on at least two occasions, it becomes obvious that this claim, in addition to constituting a mere conclusion, concerns a mere triviality. It is not and cannot be the purpose of such motions as this to *re-try* the guilt of defendant or the credibility of the witnesses, nor do we propose to permit their use for such a purpose. State v. Statler, Mo., 383 S.W.2d 534, 537–538, and cases there cited; State v. Worley, Mo., 383 S.W.2d 529, 533. In (2), defendant seeks to contradict Reddick's testimony by a supposed statement in a supposed police report (not attached or produced) to the effect that Reddick and another detective had received confidential information identifying defendant as the robber. This contention is apparently directed to the following testimony of Reddick, as we have gleaned it from the transcript of defendant's trial: that he (Reddick) was brought into the investigation a "couple of months" after the holdup; and that he had not spoken to anyone other than Bass and Benson "in reference to the identification of the party that robbed the B & B Market." A subsequent question illustrates further the context: "You have only talked to Mr. Bass about the identification? A And of course Benson was there too. I talked to him also. I thought you

had reference to some outsiders." It seems entirely obvious that what Reddick was saying was that Bass and Benson were the only ones whom he had asked to *identify* specifically the *man* who committed the robbery. No other reasonable meaning appears and the mere contention that Reddick may have received independent, confidential information by hearsay from an outsider concerning the robbery (as distinguished from information coming from one who had seen the robbery and identified the man there) can in no way tend to prove perjury on the part of Reddick. And this is true even though we assume that there was such a police report.

No averment has been made in this motion which raises an issue of *fact* requiring the hearing of evidence on any claims of perjury. Consequently, the failure of the trial court to go into the matter at the time of allocution is immaterial as is also the failure of this Court to consider the question on appeal. If defendant can state nothing now to raise such an issue, there is no reason to believe that he could have done so previously. And moreover there was no such issue before either Court.

█ Defendant asserts a violation of his constitutional rights in that he was not furnished with counsel on his appeal, as shown in 351 S.W.2d 775, citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799. We note, also, Douglas et al. v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. Missouri has universally furnished counsel to indigent defendants in the trial of felony cases since 1835. RSMo. 1835, p. 485, § 3. The Gideon case, which established the right to counsel in the trial of a felony case, was decided on March 18, 1963. The Douglas case was decided on March 18, 1963. On July 9, 1963, we amended our Rule 29.01 so as to require the appointment of counsel on appeal for indigent defendants in felony cases; while the rule could not legally be effective for six months, this Court requested immediate compliance. The judgment

**514**

and sentence involved here was rendered on September 7, 1960, two and one-half years prior to the ruling in Douglas, supra, that counsel was there required on appeal. At that time, and for generations past, it was and had been the universal practice of this Court to consider on the merits, regardless of the presence of counsel or the filing of any brief, all questions sufficiently raised in a motion for new trial and to consider independently of any motion all matters of record, including the information or indictment, the verdict, allocution, and the judgment and sentence. That practice was followed in this case. In this Court we have frequently seen criminal cases where privately employed counsel have elected not to brief and argue on appeal, but have left the merits to the Court's independent consideration. It has not been our practice to determine (as did the California Court in Douglas) whether any "good * * * could be served by appointment of counsel"; rather, we have proceeded to consider the merits, and, in effect, to brief for the defendant upon a full transcript, all those points which counsel would have been permitted to brief and argue had he appeared. It is probable that as large a percentage of criminal judgments have been reversed in this Court without counsel, as have been reversed with counsel. Under these circumstances, we decline to hold, ex post facto, that this defendant was deprived of any constitutional right because his trial counsel did not brief and argue the case on appeal or because other counsel was not appointed to do so. Moreover, the record in the original criminal case here shows no withdrawal of counsel upon the appeal. Trial counsel filed a motion for new trial, presented it (without oral argument), procured an order requiring the preparation of the transcript in forma pauperis, subsequently signed and filed a notice of appeal, and still later approved the transcript on appeal. We have no way of knowing here whether trial counsel, having proceeded thus far, abandoned the appeal or whether

he merely elected not to file a brief. In any event, the defendant did file one pro se. If it be material, three different counsel were appointed for this defendant before his first trial, another for his second trial, and a fifth for the prosecution of the present motion. Moreover, it is extremely doubtful, to say the least, whether this point can be raised upon an appeal from the trial court's order refusing to vacate its judgment and sentence. State v. Schaffer, Mo., 383 S.W.2d 698.

The last point raised in the brief of counsel is that an insufficient number of veniremen were called for defendant's jury panel. There is nothing in this record or the prior record to sustain this contention. If these statements are true, the question was merely one of error and not of jurisdiction, and it must have been preserved by appropriate objections or motions before the jury was sworn. State v. Nichols, Mo., 165 S.W.2d 674, 675; State v. Childers, Mo., 268 S.W.2d 858; State v. Ready, Mo., 251 S.W.2d 680, 683. In State v. Kinne, Mo., 372 S.W.2d 62, specific objections were made at the time as shown in our transcript at page 18, although it is not specifically so stated in the opinion, and the question there was raised on a direct appeal. The point does not support a collateral attack.

There are sundry allegations in defendant's motion which his counsel has elected not to brief, and which it is virtually impossible to digest intelligently. We mention the following: that the Habitual Criminal Act was inapplicable because no discharge from the prior confinements was shown. Defendant relies on § 556.280, RS 1949, whereas the new Second Offender Act, Laws 1959, V.A.M.S., effective long prior to defendant's present conviction and held to be applicable to prior offenses as a procedural law, State v. Morton, Mo., 338 S.W.2d 858, requires only that the defendant be sentenced and subsequently "placed

on probation, paroled, fined or imprisoned * * *." A sufficient showing was made. Defendant seems to complain that he was not given a preliminary hearing. There is no such hearing under our practice where the defendant is indicted, for probable cause has been established by the indictment. Defendant complains that his counsel did not argue orally his motion for a new trial and that neither he nor the State produced the witness Norman Benson. We do not sit in judgment upon the discretionary decisions of counsel nor attempt to "second-guess" them. Such complaints as these certainly do not show "ineffective" representation by counsel, nor any suppression of vital evidence by the State.

This defendant has previously filed here (February 28, 1961) a petition for habeas corpus which was denied; a motion for leave to proceed in the Circuit Court of the City of St. Louis (May 10, 1962) which was denied, it being obvious that a proceeding might be filed there independently; a petition for a writ of error coram nobis (November 1, 1962) which was denied, with certiorari thereon denied by the United States Supreme Court on June 10, 1963. In this group of petitions the defendant has raised and we have considered substantially all of the contentions he now makes, and in almost identical form. We have not deemed it proper or necessary to hear evidence. In federal proceedings he was denied a writ of habeas corpus, and it was held that he should exhaust his State remedies under Rule 27.26. Donnell v. Nash (C.A.8, October 22, 1963), 323 F.2d 850, certiorari denied, Feb. 14, 1964, 376 U.S. 924, 84 S.Ct. 686, 11 L.Ed.2d 619. This he has presumably now done. Having fully considered all of defendant's allegations, we are not persuaded that he alleges any fact which, if proven, would show a violation of his constitutional rights. A hearing was therefore not required.

The judgment and order of the Circuit Court is affirmed.

All of the Judges concur.