**STATE of Missouri, Respondent,**

v.

**Arthur Leslie PRICE, Appellant.**

**No. 49043.**

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

Cecil Block, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jack E. Koslow, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

By an amended information filed in the Circuit Court of St. Louis County defendant was charged with burglary in the second degree under § 560.070 RSMo 1959, V.A. M.S.,[1] of a store operated by Anchor Lumber Company, Inc., a corporation, located at 9760 St. Charles Road, Breckenridge Hills, St. Louis County. The information, invoking the provisions of the habitual criminal act, § 556.280, also alleged two prior felony convictions of defendant. Trial to a jury resulted in a verdict finding him guilty of burglary as charged. The court, after a hearing held out of the presence and hearing of the jury, found that defendant had also been convicted of and imprisoned for the prior felonies alleged in the information. Following the overruling of defendant's motion for new trial, the court assessed his punishment at imprisonment in the custody of the Missouri Department of Corrections for a term of nine years. He was then granted allocution and the court, finding that he had failed to show legal cause why sentence should not be pronounced as assessed in accordance with the verdict and the punishment assessed by the court, rendered judgment accordingly.

Counsel, who had represented defendant at all of the proceedings in the trial court, shortly thereafter died. The transcript was approved by another attorney for defendant, but no brief has been filed

1. All statutory references herein are to this revision.

in his behalf in this court. We, therefore, review all of the assignments of error validly set forth in the motion for new trial as required by S.Ct.Rule 27.20 and the portions of the record required by S.Ct.Rule 28.02, 4 RSMo 1959, pp. 4923 and 4925, 1 V.A.M.R., pp. 207 and 235.

■ Assignment No. 5 is that the court erred in refusing to sustain defendant's motion for a verdict of acquittal at the close of all the state's evidence. The record shows, however, that the motion was filed at the close of all of the evidence and we, therefore, so treat it.

The assignment requires a fairly extended statement of the evidence. It warrants a finding of the following facts. Anchor Lumber Company, Inc., hereinafter referred to as the "lumber company", is located near the southwest corner of the intersection of St. Charles Road, an east-west street, and Royalton Avenue, a north-south street. The store and office, facing north, is about 50 feet south of St. Charles Road and 30 to 32 feet west of Royalton. There are three entrances into the building, one on the east facing Royalton, one on the north facing St. Charles Road, and one on the west not facing, it seems, any street. There is a parking area on all four sides of the building. The yard is partially fenced, but the entrances thereto are guarded only by movable "sawhorses". Five strong floodlights, with sealed beams, affixed to the building, light the entire area around the east, north, south and west sides of the store. Fluorescent lights inside the store keep it lighted, so that the interior can be seen through plate glass windows in the building. All of these lights, inside and outside the building, are always on at night. The store is stocked with paints, hardware, saws, locks and hinges and other supplies, such as are sold in connection with the lumber business.

About 6:30 on the evening of March 12, 1961, Harold J. Schaeffer, president of the company, closed the premises, at which time he locked the three entrance doors to the store. On the next morning, after being summoned by one of the employees, Mr. Schaeffer came to the store. A check of the entrance door on the west side of the building showed that it had been broken open. There were "jimmy" marks on the door and doorjamb. Wood was split away from the top and bottom of the lock and the "keeper" was bent. A crowbar, which Mr. Schaeffer had not seen when he locked the west door to the store on the night of the burglary, was found lying three or four feet inside the broken door.

Shortly prior to midnight on March 12, 1961, Hans Henning, a member of the Breckenridge Hills Police Department, wearing a police uniform, was on duty in an unmarked patrol car. Driving east on St. Charles Road, he turned left and proceeded south on Royalton. As he did so he noticed a light colored automobile parked on the east side of the street, with its lights turned off, in which two men were sitting. He passed the parked car and continued on south to the next street. There he made a U-turn, drove back north on Royalton with his car lights turned off and stopped about 100 feet to the rear of the parked car, which about that time moved forward along the east side of Royalton to St. Charles Road and then backed up and came to a stop, with its lights still off, opposite the east entrance to the lumber company. The man sitting on the right side of that car got out of it, walked around in front of it and went across Royalton toward the lumber company premises. He was carrying a "bar or stick". Henning, with his car lights off, released his brakes and permitted his car to roll slowly down a decline on Royalton at that point to within 10 to 15 feet behind the parked car and stopped. Henning wrote the license number of that car, AA9–731, in a book which he carried. For a few seconds Henning lost sight of the man as he approached the lumber company store. But then looking toward the store he saw through a plate glass window of the store a man inside the store with a "crew" haircut and wearing a black jacket. That man, crouched down, was walking toward the

rear of the store. At that moment the driver of the car parked 10 to 15 feet in front of Henning's car, turned his head and started his car motor. Henning got out of his car, called to the man in the car to stop and told him that he was under arrest. The car however moved forward and Henning, looking again toward the store saw the man whom he had seen inside the store coming around the outside rear thereof, headed toward the car from which he had emerged as it stood parked on Royalton. Henning told him to stop. The driver of the car from which that man had emerged had not yet gotten away and Henning again called to him to stop, but he "gunned his motor and took off" toward St. Charles Road. Henning fired a warning shot into the air and, as the car reached St. Charles Road, Henning fired one shot into it. As it turned right onto St. Charles Road, he fired into it twice more, but it continued east on St. Charles Road. The man whom he had seen come from inside the building and who was walking toward Royalton hesitated momentarily, stopped and submitted to arrest by Henning. It was the defendant, Arthur Price. Henning then, by radio, called for assistance. Before the other officers arrived, Henning, with defendant in custody, went to the west door of the store, saw that it had been "forced" and saw a crowbar on the inside of the store about four feet from the door. He placed handcuffs on defendant. When two Overland policemen arrived, Henning and the officers took defendant to the Breckenridge police station.

Later that day an aluminum plate with a hole bored into it was placed around the door at the point where it had been damaged and the "keeper", a flat piece of metal with a hole in it which fits into the frame of the door, was put into place. On April 6, 1961, the aluminum plate was removed and photographs of the door were taken which, the evidence showed, accurately portrayed the damage done to the door in forcing it open. Four of these photographs were admitted into evidence.

On the day following the burglary, Henning received a call to "investigate" an automobile and found a light blue Ford car. There was a bullet hole in its trunk, a similar hole on its right side window and a "gouge" made by a deflected bullet on the chrome trim of the right door. The license number on that car was the same as Henning had written in his book on the night of the burglary, to wit: AA9–731. That license, as shown by the records of the Missouri Department of Revenue, Motor Vehicle Division, was issued in the City of St. Louis to defendant Arthur Price.

No evidence was introduced in behalf of defendant, other than that of his mother, who stated her relationship to defendant, made a few statements having no bearing whatever on the issues in the case, and then left the stand.

The mere statement of the evidence above set forth demonstrates that a submissible case of the burglary of which defendant was charged and found guilty was made.

■ The first assignment asserts error in the admission of State's Exhibits "A" to "H", inclusive, which were photographs of the broken door and doorjamb. (Actually, only four of these eight exhibits were admitted in evidence and shown to the jury.) The contention is that there was no proof that the door was in the same condition as found following the burglary. Defendant is mistaken in that assertion. Both Officer Henning and another officer who arrived at the scene shortly after Henning discovered the burglary testified that the pictures accurately showed the damage done to the door and doorjamb when they first had viewed it. The pictures were admissible. State v. Finnell, Mo., 280 S.W.2d 110, 112 [3].

■ The second assignment is that the court erred in admitting into evidence the crowbar found near the broken door on grounds that the evidence did not show that it was not the property of the lumber company. Obviously, proof of ownership of

the crowbar or from whence it came was immaterial. The materiality of that evidence was that the presence of the crowbar near the broken door, which, as the oral testimony showed, bore "jimmy" marks, tended not only to establish an element of burglary, i. e., the forcible breaking of the locked door; but it also tended to show the fact that defendant, who was discovered inside the building, had broken the door by use of that crowbar. The contention is overruled.

■ The third assignment is that the court erred in admitting evidence that Officer Henning fired several shots at the Ford car, bearing license No. AA9–731, which was driven away from near the scene of the crime, without showing any connection between the driver and the defendant. The fourth assignment is that, inasmuch as defendant was detained at the scene of the crime, the court erred in admitting evidence that Officer Henning found the car the following day with bullet holes in it, because there was no showing of any connection between the automobile and defendant. These two assignments ignore other relevant evidence: that defendant, seated in the parked car with another person, with the lights off, emerged from that car carrying a bar or stick; that he crossed Royalton toward the lumber company store, entered that store, and left behind him a broken door, doorjamb, and a crowbar adjacent thereto; and that he walked back toward the car from which he had emerged, which bore his own license number, AA9–731, as taken down that night by Henning, and which car also showed bullet marks corresponding to those fired by Henning at the car that night. This evidence so clearly constitutes cogent and convincing evidence of defendant's physical participation in the burglary of which he was charged as to require no further discussion. Both assignments are overruled.

■ The sixth assignment alleges error in "giving and reading to the jury each and

every instruction offered by and on behalf of the State, for the reason that the said instructions were misleading, conflicted with each other, tended to invade the province of the jury, and shifted the burden of proof from the State to the defendant." The court gave four instructions, all of which are in conventional and approved form. None of them shifts the burden of proof from the State to the defendant. None of them is misleading or in conflict with any other; nor does any of them invade the province of the jury. Moreover, the assignment wholly fails to comply with the mandatory provisions of S.Ct.Rule 27.20, in that it is too general in its terms to present anything for review. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 309; State v. Johnstone, Mo., 335 S.W.2d 199, 205. The assignment is overruled.

■ The seventh assignment is that "the court erred in failing and refusing to instruct the jury on all the law involved in the case, such as the malicious destruction of property, trespassing, etc." There was not a scintilla of evidence in this case that defendant committed a mere malicious destruction of or trespass upon defendant's property. All of the evidence was that he either burglariously broke and entered the lumber company store or was not guilty of any offense. Furthermore, the burglary here charged does not include the lesser offense of malicious destruction of property or trespass. State v. Drake, Mo., 298 S.W.2d 374, 377; State v. Richardson, Mo., 343 S.W.2d 51, 55. The contention is denied.

■ The eighth and final assignment of error is that "the Court erred, * * * in not having the sheriff or bailiff of the court sworn to keep the jury together in some private or convenient room or place and not permit any person to speak with or communicate with them nor do so himself unless by order of the Court, in violation of Section 546.240 R.S.Mo., and [in] failing and refusing to declare a mistrial upon the timely request of the defendant when this

violation of the law was called to the Court's attention." Section 546.240, in pertinent part, reads:

> "When the argument is concluded, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer who, in case of a felony, shall be sworn to keep them together in some private or convenient room or place and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court, or to ask them whether they have agreed upon their verdict; and when they have agreed, he shall return them into court, or when ordered by the court."

The record does not show whether the sheriff was sworn when the argument was concluded to keep the jury together as required by the above section. But the record also fails to show that any failure to so swear the sheriff, if it be the fact that he was not so sworn, was ever called to the attention of the court as alleged in the motion for new trial. The first mention of the allegation shown in the record with reference to any failure to so swear the sheriff is the unverified statement in the motion for new trial. Neither was any evidence adduced in support of the allegation made in the motion for new trial. On the other hand the record does show that following argument of the cause, the jury retired to the jury room to begin its deliberations at the hour of 12:25 p. m., and at the hour of 12:55 p. m. returned into open court its verdict (omitting caption): "We, the Jury, in the above-entitled cause, find the defendant guilty of Burglary in the Second Degree."

In State v. Stidham, Mo., 258 S.W.2d 620, 622, this court said of more aggravated situation than here presented: "The appellant did not offer to prove the separation of the jury. Nothing is better settled than that unverified allegations in a motion in a criminal case do not prove themselves. State v. Henderson, 356 Mo. 1072, 204 S.

W.2d 774." Under the circumstances here shown, we find nothing whatever to establish the allegations of the motion for new trial. To the contrary, the short period of deliberation tends rather to indicate that the jury was together during its deliberations as required by statute. The contention is denied.

The amended information sufficiently charges the crime of which defendant was found guilty, § 560.070; the verdict is sufficient in form and responsive to the issues. The punishment assessed is within the limits provided by law, §§ 560.095, 556.-280; and the judgment is in due form of law.

The judgment is affirmed.

All of the Judges of the Division concur and HUNTER, Special Judge, concurs.