STATE of Missouri, Respondent,

v.

Willie Wade BURGESS, Appellant.

No. 50931.

Supreme Court of Missouri, Division No. 1.

March 8, 1965.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Carl R. Gaertner, Sp. Asst. Atty. Gen., St. Louis, for respondent.

HENRY J. WESTHUES, Special Commissioner.

By an information filed in the Circuit Court of New Madrid County, Missouri, the appellant Burgess was charged with murder in the first degree. The crime was alleged to have occurred on November 2, 1963. An application for a change of venue was granted and the cause was transferred to the Circuit Court of Mississippi County. Upon a trial, a jury found Burgess guilty as charged and assessed his punishment at life imprisonment. A motion for new trial was filed which the court overruled and Burgess was sentenced. An appeal was taken to this Court.

The record shows that the trial was had on May 27, 1964. On January 6, 1964, the court appointed Linus E. Young, a member of the New Madrid County Bar, to represent the defendant. After the case was transferred to Mississippi County, the court appointed C. Frank Reeves, a member of the Mississippi County Bar, to aid Young in the trial of the case. These two attorneys represented the defendant throughout the trial. They filed a motion for new trial and after the motion was overruled and defendant sentenced, a notice of appeal was filed. A request to appeal as a poor person was filed and approved. A complete transcript of the proceedings was filed in this Court on defendant's behalf. The record shows that during the trial, the prosecuting attorney and the defendant's attorneys observed the rules of evidence and the court was called upon to rule on only a few objections.

The trial court gave the jury an instruction submitting the question of defendant's guilt or innocence of murder in the first degree or murder in the second degree; further, an instruction was given on circumstantial evidence as well as one on self defense; and an instruction with reference to evidence that the deceased was of a rash, turbulent, and violent disposition was given.

The record is such that it is difficult to find any basis upon which to predicate error. The motion for new trial contains only two assignments which are as follows:

"(1) Because the instructions to the jury are misleading and contrary to the evidence; contrary to the law; and taken as a whole had the effect of directing the jury to return a verdict for the State.

"(2) The Court erred in failing to give an instruction on manslaughter because there was evidence from which the jury could have found that the killing was committed in a sudden heat of passion due to adequate provocation."

The first assignment presents nothing for review. No specific instruction is complained of nor is any complaint made of the refusal to give any specific instruction. S.Ct. Rule 27.20, V.A.M.R., and State v. Price, Mo., 365 S.W.2d 534, 1. c. 538(6).

To rule on the second assignment of error, it is necessary to review the evidence. The transcript justifies the following statement of acts. Henry Thomas, referred to by some witnesses as "Son" Thomas, was the victim of the homicide. He operated a small restaurant in New Madrid, Missouri. People also gathered there and engaged in gambling games. On the evening of November 2, 1963, the defendant and one Bud Boyd were there and had taken part in shooting dice. An argument took place between Bud Boyd and defendant Burgess whereupon the deceased Thomas ejected both from his place of business. While Thomas was asking the defendant to leave,

he, Thomas, displayed a knife and said to defendant Burgess, "Boy, I don't want to hurt you." There is some evidence that Thomas held the knife against the defendant's body. During this time, Burgess made a statement to the effect that he would kill Thomas before the night was over.

Jerry Thomas, no relation to the deceased, testified that he lived at the same place where Henry "Son" Thomas lived which was about five blocks from the Thomas place of business. His testimony was that on the night of November 2, 1963, at about 10:00 p. m., the defendant came to the place where he lived and asked for a gun. Note Jerry Thomas' evidence:

"Q Did anyone come to the house that night?

"A Yes, sir.

"Q Who came?

"A Willie Wade.

"Q Is that Willie Wade Burgess, the boy sitting behind this counsel with the red shirt on?

"A Yes, sir.

"Q. Did you have any conversation with him?

"A Yes, sir.

"Q What did he say?

"A He come to the door. I had the door locked and was in the bed. He come to the door and knocked on the door.

"Q You just tell it in your own words about what conversation you had with him, if anything.

"A Well, I opened the door, and when I opened the door, Son had the room right next to mine. The door was open. I flipped the light on and I done stumbled to a cot I got up on and I sit on the side of a bed and he said, 'Son Thomas sent me after his gun. Son told me you had a shotgun he hunted with,' and he said, 'Son Thomas sent me after the gun,' and he went in Son Thomas' room. I am sitting on the bed. He walked in Son Thomas' room and he looked around on the wall. He said, 'Son Thomas didn't have a gun.' I said, 'Son Thomas carried that gun to hunting and,' I said, 'He didn't bring it back yet.' He said, 'Well, you got it around here somewhere,' and he walked to Son Thomas' bed and raised up the mattress, and I was setting on the bed. I spoke up and I said, 'Willie Wade, you mean to tell me a man sent you after a gun and didn't tell you where to find it at?' and Willie Wade told me—he walked to my door. He say, 'Yeah, he told me where to find it but I forgot. He told me where to find it at but I forgot,' and he said, 'Well, I am going'; * * *."

John D. Jordan testified that he did some barbering when he was not doing railroad work. He stated that when he came home on the night of November 2, 1963, he noticed that the door of his place had been broken and someone had been in the building. After an inspection, he found that his shotgun, a 12-gauge Winchester pump-gun, and some shotgun shells were missing. This witness identified the gun which had been introduced in evidence as having been taken from the defendant on the night of the killing to be the gun taken from his place on the night of November 2.

There was evidence that after the shooting, the defendant stated that he had taken the gun from Jordan's place and had gone to a levee to fire the gun to see if it would work; that he then went to the Thomas place to kill him.

Police officers testified that they were attracted to the Thomas place by shots. When they arrived, the defendant was found behind a parked truck near the Thomas building. He had the 12-gauge Winchester gun, above mentioned, in his hands.

A number of witnesses testified that just before the shots were fired they saw Thomas standing in the doorway of his place of business. They heard a shot and saw Thomas fall to his knees; then a second shot was fired. Witnesses testified that Thomas did not have anything in his hands while he was standing in the doorway. When the body of Thomas was searched, a 32-caliber pistol was found in his coat pocket.

After Burgess was arrested, he was heard to say, "I have killed Son Thomas and that is what I wanted to do."

Defendant did not testify. A number of witnesses testified that the deceased had a reputation of having a rash, turbulent, and violent disposition. There was evidence to the contrary. The time of the shooting was fixed by witnesses for the State and witnesses for the defendant as having been between forty minutes to an hour after Burgess had been ejected from the Thomas premises.

■ We are of the opinion that the defendant was not entitled to a manslaughter instruction. The record does not contain a shred of evidence to support such an instruction. The difficulty after which defendant was ejected from the Thomas place was of minor nature. Furthermore, sufficient time had elapsed for a cooling off period. Defendant's own conduct so demonstrated. His calm manner was disclosed by Jerry Thomas' evidence with reference to the defendant's looking for a gun. Not being able to find one, he burglarized a barber shop and found a shotgun. Then, he took it to a levee to try it out to be sure it worked. He then went to the Thomas place and without a word being spoken, he shot the deceased who was standing in his doorway. There was more than sufficient time for defendant's passion to have cooled. See 40 C.J.S. Homicide § 54, pp. 917, 918; State v. Richardson, 340 Mo. 680, 102 S.W. 2d 653, 1. c. 657, 658(10, 11); State v. Farris, Mo., 6 S.W.2d 903, 1. c. 905(1, 2); State v. Parker, 358 Mo. 262, 214 S.W.2d

25, 1. c. 27(5, 6); State v. Brookshire, Mo., 368 S.W.2d 373, 1. c. 384(13, 14).

We rule the trial court properly refused to instruct on manslaughter.

We have examined matters which are required to be reviewed by S.Ct. Rule 28.02, V.A.M.R., and find no reversible error therein.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.